# CHARLESTON

## STATE v. BRIGGS.

<div style="float:right">58 291<br>60 584</div>

Submitted September 12, 1905.   Decided November 14, 1905.

1. COUNSEL FOR PRISONER—*Withdrawal of Attorney.*

   When the court appoints three practicing attorneys to aid a prisoner in making his defense, it is not error for one of them to withdraw from the trial, where the prisoner makes no objection to such withdrawal.   (p. 293.)

2. INSTRUCTIONS—*Motion to Set Aside Verdict of Jury—Exceptions.*

   A motion to set aside the verdict of a jury, on the ground that the lower court gave certain instructions for the State, will not be entertained in this Court, unless it affirmatively appears from the record that the accused objected to such instructions at the time they were offered, and excepted to the ruling of the court in giving them.   (p. 293.)

3. CRIMINAL LAW—*Accidental Killing—Criminal Intent.*

   In determining the criminality of the act of killing, it is immaterial whether the intent was to kill the person killed, or whether the death of such person was the accidental or otherwise unintentional result of the intent to kill some one else—the criminality of the act is deemed the same.   (p 294.)

Error to Circuit Court, Fayette County.

Jesse Briggs was convicted of murder and brings error.

*Affirmed.*

McVEY & DANIELS and LITTLEPAGE & VICKERS, for plaintiff in error.

C. W. MAY, Attorney General, for defendant in error.

SANDERS, JUDGE:

The defendant, Jesse Briggs, was convicted of the murder of Woodson Lyons by the criminal court of Fayette county, and sentenced to be hanged; and a writ of error to this judgment was allowed by one of the Judges of this Court.   The

defendant was tried at the January term, 1904, of said court, and on a motion for a new trial he filed his affidavit, showing that at the same term, and within a few days after he was indicted, he appeared before the court and stated that he had no money, and was, therefore, unable to employ counsel to represent him upon his trial. The court thereupon appointed Elmo McVey, an attorney at law, to make his defense. Shortly thereafter, and on the 26th of the same month, the prisoner was arraigned for trial, at which time the court appointed J. W. Daniel and E. G. Pierson, attorneys, to assist McVey in his defense. After the jury was impaneled, Pierson, without the prisoner's consent, voluntarily withdrew from the case. The affidavit also shows that Pierson was an attorney of ability and experience, while McVey and Daniel were both young and inexperienced attorneys. The affidavit does not expressly state that Pierson accepted the appointment, and entered upon the trial as one of the attorneys, but presumably he did, inasmuch as it appears therefrom that after the jury were sworn, he withdrew. It does not appear that there was an objection to Pierson's withdrawal, nor that demand was made for additional counsel, and this matter was not called to the court's attention, nor complained of, until after verdict. The important right of one accused of crime to have the assistance of counsel in making his defense was denied by the common law. When the government charged a person with treason or felony, he was denied this privilege, and only such questions as he could suggest was counsel allowed to argue. But the framers of our Constitution, regarding the protection of life and liberty as the protection of the most sacred and greatest right of man, promulgated such constitional provisions as to throw around every subject of the sovereignty a veil of protection from oppression and wrong, by extending to every citizen, when the State prefers a charge against him for the infraction of its laws, the privilege of being assisted by counsel in establishing his innocence, and seeing that justice is done him when called upon to answer such charge. The law is never vindicated by the oppression and punishment of the innocent, nor by even the punishment of the guilty, until there is a fair trial in conformity to the rules of law; and in order to avoid unjust punishment. and to see that all who are charged have their

cases fully and fairly presented to the court and jury before whom they are arraigned, our Constitution has provided that the accused shall have the assistance of counsel upon his defense. But while we have such constitutional provision, and even if it should be so construed as to make it the duty of the court to provide counsel for the accused when he is pecuniarily unable to do so, rather than permissive and extending to him the privilege of such counsel, which was denied him at common law, it is not such as makes it the duty of the court to make the appointment, unless a demand therefor has been properly made. The right is such as can be waived, and the silence of the accused, and his failure to request the assistance of counsel, is a waiver of such constitutional guaranty. In *State* v. *Kellison*, 56 W. Va.. 690, it is said by JUDGE POFFENBARGER : "The Constitution does not make assistance of counsel a prerequisite to conviction as it does a trial by jury. The clause contains no prohibitory language. It only says he shall have the assistance of counsel. * * Even if said clause makes it the duty of the State to furnish counsel when demanded, it does not follow that such action is to be taken unless demand therefor has been made." In this case, the court appointed three attorneys to represent the accused upon his trial, and while the affidavit alleges that the two who remained and conducted the trial, were young and inexperienced, yet no objection was made to Pierson retiring from the case; the court was not asked to require him to continue in the trial, nor was additional counsel asked for. The defendant complained of his retirement for the first time after the verdict was pronounced against him. The affidavit, while it contains the facts as hereinbefore stated, was not made until after verdict. We think the court committed no error in refusing to set aside the verdict on this ground.

It is claimed by the prisoner that the court erred in giving certain instructions to the jury for the State. We find, from the bill of exceptions, that the defendant moved to have the verdict of the jury set aside, on the ground that instructions numbered one to seven, inclusive, were given for the State, but the record fails to show that the court gave more than five such instructions, which are numbered one, two, three, four and seven, and as to these which were given, there is

nothing in the record to show that the defendant made any objection to them when offered, or excepted to them when given. In fact, there is nothing to show that the prisoner complained of them until he made his motion to set aside the verdict of the jury, and assigned the giving of them as one of the grounds therefor. But even if objection had been made to these instructions, counsel, in their brief, do not point out any objection to them, nor is that urged as a ground for reversal of the case; and, moreover, upon an examination, it is found that they correctly expound the law applicable to this case. The prisoner, in his assignment of error, says that it was error for the court to refuse to give the special charge to the jury, which was asked by him. We do not find contained in the record any instructions or charge offered by the defendant, which were not given, but, under the head of "Defendant's Instructions," we find numbers five and six, but it does not appear whether these instructions were given or refused, but they propound correct propositions of law, applicable to the case, and nothing appearing in the record to the contrary, we must presume that these instructions were given; and, inasmuch as they are numbered five and six, it would indicate that there had been other instructions offered by the prisoner, but if so they are not made a part of the record, and this Court can not determine whether or not it was error for the court to refuse them, even if it did so.

This brings us to the question as to whether or not the verdict of the jury is supported by the evidence, and in dealing with this question, it will not be our purpose to detail the testimony, because it will avail nothing to do so, and, in fact, it is not necessary for an appellate court to give a review, and most especially an extensive one, of the testimony offered upon the trial; but all that is proper, and certainly all that is demanded, is to give conclusions reached by the court from such evidence.

The evidence here shows that the prisoner fired the shot which resulted in the death of Woodson Lyons; in fact, the prisoner does not deny this. And not only does it show that the shot was fired, but that at the time it was done the deceased and Mary Young were seated in a room, and that the prisoner stepped to the door and addressed himself to the

woman, and immediately pulled his pistol and fired four shots in rapid succession, some finding lodgment in the woman, and one in the deceased. The prisoner, to excuse himself, says that at the time the shot was fired, both the woman and the deceased were advancing toward him, the woman having in her hand a razor. This evidence of the prisoner is without corroboration, while the evidence clearly preponderates to the contrary, and shows that the shots were fired without excuse or provocation.

Counsel argue that this killing was done in the heat of passion, and that, for that reason, the jury should not have found the prisoner guilty of murder in the first degree. We see no just ground upon which to base such a contention. The evidence fails to disclose anything from which such a conclusion could be drawn. Murder in the first degree is the wilful, deliberate and premeditated killing of a human being, but this deliberation and premeditation need not exist for any appreciable length of time before the commission of the act. If, at the time the fatal shot was fired, the prisoner had formed the specific intent of taking the life of either Mary Young or the deceased, he would be guilty of murder in the first degree, and upon this evidence the jury has so found. While we realize full well the extreme penalty which the prisoner has been called upon to pay, and while the infliction of such punishment always appeals to the sympathy of men personally, yet it must be remembered that the law declares that he who takes life wilfully, premeditatedly and deliberately, must pay the debt with his own life in return. This being the demand of the law, the evidence proving the prisoner guilty, the jury having so found, and the trial court having so adjudged, this Court is powerless, under the forms and rules of law, to render assistance to the prisoner now, and the judgment of the criminal court is, therefore, affirmed.

*Affirmed.*