394 A.2d 1344.

STATE *vs.* ROBERT G. COLE.

DECEMBER 4, 1978.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

KELLEHER, J.   During the midafternoon of February 15, 1975, the good fellowship that reigned supreme among the 20 or so customers at the Silver King Tap in Providence received quite a jolt when the defendent, Robert G. Cole (Cole), entered the premises with a .32 caliber pistol in his hand, turned toward the bar, shouted something like "I said I'd get you" or "I said I'd be back," and fired two shots in the direction of Gary Balletto, the bartender. Cole then proceeded to spray four shots in and about the premises. Once

the customers recovered from the shock of Cole's initial volley, which was aimed at the bartender, they wrestled the intruder to the floor, subdued him, and kicked the pistol from his hand. The Silver King "shootup" was over when the police arrived at what can only be described as a gory scene. Three people had been shot — one of them fatally. The area was splattered with blood.

The wounded were the bartender and Cole. Cole had shot himself in the wrist as he continued to fire his weapon while grappling on the barroom floor with the patrons. The deceased was Albert Nash. Albert had died almost immediately after being struck by a "missile" that passed through his right lower chest in a horizontal but somewhat upward plane and punctured both lungs and his aorta before exiting from the left upper portion of his back.

In time, Cole was charged in a multi-count indictment with possession of a firearm while committing a crime of violence, unlawful possession of a pistol, assault with intent to murder the bartender, and the murder of Albert Nash. A Superior Court jury returned a guilty verdict on all four counts. Cole is before us on a two-issue appeal, which relates only to the murder conviction. He claims that the trial justice erred in not charging the jury on second-decree murder and in denying his motion for a new trial.

The charge-to-the-jury issue needs little discussion. The record discloses that sometime during the pendency of the trial, the trial justice had informed counsel that he would not charge on second-degree murder or manslaughter. Prior to the giving of the charge, Cole's trial counsel informed the trial justice that he had discussed the proposed charge with Cole, and then reported that

> "he [Cole] indicates to me that it's his desire that the Court charge murder in the first degree, and that's all. I've explained to him the difference between murder in the first degree and murder in the second degree. And that the Court felt, and that counsel felt there was no

factual basis for the murder-charge of murder in the second degree. I think he understands that and is willing to assent to that. Correct?"

Cole then told the trial justice that he was aware of what was about to transpire.

After limiting his charge to an explanation of first-degree murder, the trial justice told the jury that if they believed Cole had entered the Silver King with the intention of killing the bartender, they could then apply the doctrine of transferred intent[1] and find Cole guilty of the first-degree murder of Albert Nash. In taking this position, the trial justice repeated with some modification a charge given in a trial court that was reviewed and upheld by the Maryland Court of Appeals in *Gladden* v. *State*, 273 Md. 383, 330 A.2d 176 (1974). There, the Court of Special Appeals, in adopting the doctrine, said:

> "[W]e now hold, upon the application of the principles of common law and the overwhelming weight of judicial authority, as did the Court of Special Appeals, that the doctrine of 'transferred intent' is the law of Maryland and that the *mens rea* of a defendant as to his intended victim will carry over and affix his culpability when such criminal conduct causes the death of an unintended victim." *Id.* at 405, 330 A.2d at 189.

In limiting ourselves solely to the lack of any instructions about second-degree murder,[2] we will repeat here what we said in *State* v. *Marrapese*, 116 R.I. 1, 12, 351 A.2d 95, 100 (1976). Rule 30 of the Superior Court Rules of Criminal Procedure requires trial counsel to object to the charge as given and articulate the objections in such a fashion that the trial

---

[1]A transferred intent to murder has been said to occur when the accused intends to kill one particular person and by accident or otherwise kills a different person. *State* v. *DeSantos*, 89 N.M. 458, 461, 553 P.2d 1265, 1268 (1976).

[2]Cole's trial counsel objected to the trial justice's reliance on the transferred-intent doctrine, but his appellate counsel has not seen fit either to brief or to argue that objection.

justice is made aware of the exact nature of his alleged error, be it of commission or omission. Here, on this record, the trial counsel appears to have made a deliberate choice in taking an all-or-nothing view of the evidence and the charge. If the jury was not convinced that Cole's premeditation had existed for more than a mere moment, Cole would have been entitled to acquittal. Unfortunately for Cole's cause, the jury returned a guilty verdict. By deciding to rest his fate on either a first-degree conviction or an acquittal and by failing to request that instructions be given to the jury on second-degree murder, Cole is now precluded by both Super. R. Crim. P. 30 and our prior decisional law from assigning as error this particular facet of the trial justice's charge. *State* v. *Levitt,* 118 R.I. 32, 371 A.2d 596 (1977).

In disputing the trial justice's denial of his motion for a new trial, Cole claims that the evidence supporting the inference of guilt failed to exclude the equally reasonable inference that he was blameless so far as the homicide was concerned. In taking this position, he relies on evidence given by the state's expert witness, an assistant medical examiner, and a special agent for the Federal Bureau of Investigation, who testified that the powder burns on the deceased's clothes indicate that when the gun was fired, the pistol's muzzle was no further than 6 inches away from Albert. Cole then takes this 6-inch limitation and invites us to examine the transcript because he contends that there is no evidence which indicates that he was within the 6-inch range of Albert Nash at any time during his visitation at the Silver King. He also points to police testimony which indicates that as they were gathering the physical evidence immediately after the shootings, they found Cole's pistol under the counter of the bar, free of fingerprints and resting on an ice machine about 15 feet away from the spot where Cole lay spread out on the floor. Cole argues that all these factors, when taken together, give rise to an equally reasonable inference that someone other than he picked up the gun, deliberately shot Nash, wiped the gun clean of fingerprints, and then placed the weapon on the ice machine.

Cole's reliance on the equally-reasonable-hypothesis-of-innocence theory is based on the principle which holds that, when a case against an accused is based solely on circumstantial evidence, a finding of guilty can only be made if the facts and circumstances which establish guilt are not only consistent with the hypothesis that the accused is guilty but that they also preclude the finding of any reasonable inference that he is innocent. This principle, which was first enunciated in *State* v. *DiNoi,* 59 R.I. 348, 368, 195 A. 497, 506 (1937), has been quoted increasingly ever since it was repeated some 20 years ago in *State* v. *Montella,* 88 R.I. 469, 476, 149 A.2d 919, 922-23 (1959). Even assuming that the so-called *Montella* rule is applicable here, we have said that the rule does not require a factfinder to search out a series of speculative theories and elevate them to the status of reasonable doubt. *State* v. *Jefferson,* 116 R.I. 124, 129 n.1, 353 A.2d 190, 194 n.1 (1976).

In reviewing the trial justice's consideration of Cole's motion for a new trial, we are hampered by the fact that at no time did he discuss the evidence as it related to the charge on the doctrine of transferred intent, nor did he make any reference to the 6-inch limitation now argued here by Cole. While a trial justice need not make an exhaustive review of the evidence, we have said that he should at least refer to the facts sufficiently so that a determination may be made whether he has misconceived or overlooked material evidence. *McCusker* v. *Fascione,* 117 R.I. 478, 483, 368 A.2d 1220, 1223 (1977). Consequently, we think it best in dealing with Cole's challenge to the sufficiency of the evidence that we apply the appellate rule and look at the evidence in the light most favorable to the prosecution to see if there is any competent evidence that supports the jury verdict and then determine whether that evidence is sufficient to prove guilt beyond a reasonable doubt. *State* v. *Palmigiano,* 111 R.I. 739, 746, 306 A.2d 830, 835 (1973); *State* v. *Contreras,* 105 R.I. 523, 531, 253 A.2d 612, 617 (1969).

The bartender had testified that Cole had been involved in

an incident at the bar some 2 weeks prior to the shooting.[3] Russell Nash had told the jury that after the pistol had been kicked out of Cole's hand, no other shots were fired. The pistol had no grips, and Russell said that once Cole lost his weapon, some patron picked it up and threw it behind the bar. The medical examiner readily conceded that she had no way of knowing whether the gunman was standing next to or at arm's length away from Albert when the weapon was discharged. She said it would be fair to conclude that the person doing the firing may have been as far away from the victim as 3 feet at the moment of firing.

The 6-inch theory can be best put to rest by referring to the position taken by the state when Cole sought a judgment of acquittal at the conclusion of the state's evidence. At that time the prosecutor made clear that he was not attempting to show that Albert was shot while Cole discharged his weapon as he and his adversaries rolled along the floor. The prosecutor was working on the premise that six shots were fired in a matter of seconds. Three or four were fired while Cole was in an upright or somewhat upright position and the remaining shots came while Cole was in a prone position on the floor. The prosecutor made quite clear that the physical evidence supported the reasonable inference that the third or fourth bullet killed Albert Nash.

All the facts indicate that when Cole entered the premises, Albert was standing alongside his brother, Russell, at the end of the bar which was nearest the door. After Cole had fired the first two shots at the bartender, Russell, who stood to Albert's right, grabbed Cole's forearm. Cole then tried to turn the weapon in Russell's direction. One of the patrons then crashed into Russell and Cole, pushing both of them towards the middle of the bar. However, Russell testified that just as he and Cole started to fall toward the floor, the gun was fired. The trajectory taken by the bullet is mute, compelling evidence indicating that Albert, upon seeing his

---

[3]Balletto was not the bartender on duty at the time of the incident.

brother grab Cole's forearm, turned to his right when Cole pulled the trigger for the third or fourth time just as he was switching his aim from the bartender toward his newly found adversary, Russell.

Furthermore, a diagram of the bar showing the relevant blood stains that had been found by the police was prepared by the city engineer's office. This diagram was drawn to scale and indicates that Albert's upper body was located just about 3 feet from where his brother, Russell, stood when Russell first grappled with Cole. This diagram is further evidence that Cole's arm had indeed been extended to the point that Cole was somewhere beyond the 6-inch range when the shot struck Albert. The testimony to which we have just alluded, when taken in light of the trial justice's charge, amply justifies the verdict rendered by the jury.

The defendant's appeal is denied and dismissed, and the judgment of conviction is affirmed.

*Julius C. Michaelson*, Attorney General, *John S. Foley*, Special Assistant Attorney General, for plaintiff.

*Hodosh, Spinella, Hodosh & Angelone, Gerard McGovern DeCelles*, for defendant.