328 S.E.2d 206

**STATE of West Virginia**

v.

**Roger HALL.**

No. 16148.

Supreme Court of Appeals of
West Virginia.

March 22, 1985.

S. Clark Woodroe, Asst. Atty. Gen., Charleston, for appellee.

Douglas Witten and Hugh C. Avis, Logan, for appellant.

MILLER, Justice:

Roger Hall was convicted in the Circuit Court of Logan County of second degree murder and unlawful wounding. His principal assignments of error relate to the admission of his confession and a claim that the jury verdicts are inconsistent. His convictions arose from a single incident in which he fired a .357 magnum handgun three times, wounding James Lowe and killing his brother, David Lowe. For the reasons set out below, we affirm his convictions.

With regard to his confession, the defendant contends that he was too intoxicated to voluntarily and intelligently waive his constitutional rights. Furthermore, he asserts that the arresting officers failed to take him to a magistrate without unnecessary delay.

The evidence with regard to the intoxication question reveals that the defendant and the Lowe brothers had been drinking some beer first and then wine over a five-hour period prior to the time of the altercation that led to the shooting. There was conflicting evidence on both the amount of alcohol he consumed and the degree of his intoxication. This drinking was not continuous as the defendant drove about visiting various persons. Prior to the actual shooting, when the defendant was in front of the Stolling home, where the shooting occurred, he had quit drinking. When the arresting officers came to the scene, they indicated that the defendant appeared rational and coherent and he continued to be so on the way to the sheriff's office, all of which took about one hour.

The trial court, based on the arresting officer's testimony and the contents of the defendant's written confession taken shortly after he was arrested, concluded that he possessed a good recollection of the events and was not impaired by way of intoxication. The court was of the view that there was no evidence to demonstrate that he was so affected by alcohol that he had lost the ability to comprehend what was occurring. To be admissible, a confession must be voluntary and there must be a knowing and intelligent waiver of the rights guaranteed by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966), and the accused must possess the mental capability to do so. We discussed these principles at some length in *State v. Persinger*, 169 W.Va. 121, 286 S.E.2d 261, 267 (1982), where we said: "The basis for these principles springs from the traditional requirement that constitutional safeguards such as those embodied in *Miranda* cannot be

waived unless there is a knowing and intelligent relinquishment of such rights." [1]

▇ In *State v. Young*, 173 W.Va. 1, 311 S.E.2d 118, 133 (1983), we briefly discussed the effect of intoxication on the admissibility of statements made by a defendant. Without any elaborate discussion, we stated, "Although the [defendant's] claim that he was intoxicated at the time the statements were made may have some bearing upon the reliability of the statements, such claim does not preclude their admission into evidence." *See also State v. Woods*, 169 W.Va. 767, 289 S.E.2d 500, 502 (1982). Most courts have concluded that a claim of intoxication may bear upon the voluntariness of a defendant's confession, but, unless the degree of intoxication is such that it is obvious that the defendant lacked the capacity to voluntarily and intelligently waive his rights, the confession will not be rendered inadmissible. *E.g., United States v. Smith*, 608 F.2d 1011 (4th Cir.1979); *United States v. Woody*, 690 F.2d 678 (8th Cir.1982), *cert. denied*, 459 U.S. 1177, 103 S.Ct. 830, 74 L.Ed.2d 1024 (1983); *Mallott v. State*, 608 P.2d 737 (Alaska 1980); *People v. Phillips*, 110 Ill.App.3d 1092, 66 Ill.Dec. 729, 443 N.E.2d 655 (1982); *Bundy v. State*, 427 N.E.2d 1077 (Ind.1981); *State v. Warner*, 237 A.2d 150 (Me.1967); *Commonwealth v. Parham*, 390 Mass. 833, 460 N.E.2d 589 (1984); *State v. Kimball*, 613 S.W.2d 932 (Mo.App.1981); *State v. Oxendine*, 303 N.C. 235, 278 S.E.2d 200 (1981); *People v. Schompert*, 19 N.Y.2d 300, 279 N.Y.S.2d 515, 226 N.E.2d 305, *cert. denied*, 389 U.S. 874, 88 S.Ct. 164, 19 L.Ed.2d 157 (1967); *State v. Corona*, 60 Or.App. 500, 655 P.2d 216 (1982); *State v. Gardner*, 28 Wash. App. 721, 626 P.2d 56 (1981); 29 Am.Jur.2d *Evidence* § 577 (1967); 23 C.J.S. *Criminal Law* § 828 at 229–30 (1961); Annot., 69 A.L.R.2d 361 (1960). We believe that the trial court was correct in concluding that the defendant knowingly and intelligently waived his constitutional rights and that his confession was not rendered inadmissible by virtue of intoxication.

▇ The defendant also claims that the arresting officers were guilty of unreasonable delay in taking him before a magistrate. We have recognized that W.Va. Code, 62–1–5, requires that a defendant after he is arrested be taken "without unnecessary delay before a [magistrate]." *See* Syllabus Point 1, *State v. Mason*, 162 W.Va. 297, 249 S.E.2d 793 (1978). We have also stated in Syllabus Point 6 of *Persinger*:

> "The delay in taking the defendant to a magistrate may be a critical factor where it appears that the primary purpose of the delay was to obtain a confession from the defendant."

In the present case, the evidence at the suppression hearing was that after arresting the defendant at the scene of the crime, the officers transported him to the courthouse. Because the crime was committed late at night, the arresting officers radioed to have a magistrate appear for purposes of a preliminary arraignment. They did not arrive at the courthouse until almost one o'clock in the morning. The defendant was taken to the sheriff's office where he signed a written *Miranda* waiver at about 1:15 a.m. Immediately thereafter the defendant gave a confession which was almost completely reduced to writing by the time the magistrate arrived at his office in the courthouse. Within a few minutes of the magistrate's arrival, the defendant was brought before him. We do not believe that there was an unwarranted delay in presenting the defendant to the magistrate.

The defendant's second ground of error is that the jury verdicts of unlawful wounding and second degree murder are inconsistent. He contends that the State's theory supporting the murder conviction was based on transferred intent. A State's instruction advised the jury that if they believed the defendant, without lawful excuse or justification, attempted to intentionally, maliciously, and deliberately kill James Lowe, but actually shot and killed David Lowe, then the elements of intent, malice,

---

1. We also recognized in *Persinger* that the voluntariness of a confession could be affected based on either a claim of insanity, citing *State v.* *Milam*, 163 W.Va. 752, 260 S.E.2d 295 (1979), or diminished intelligence, citing *State v. Hamrick*, 160 W.Va. 673, 236 S.E.2d 247 (1977).

and deliberation could be transferred to the person actually shot, David Lowe, and that it is not a defense that the defendant shot the wrong person.[2]

 The defendant argues that since the jury by its verdict of unlawful wounding, rather than malicious wounding, found that the defendant did not act with malice in shooting James Lowe, no malice could be transferred to support the second degree murder conviction for the killing of David Lowe. Malice, of course, is an essential element of both first and second degree murder. *See* Syllabus Point 1, *State v. Kirtley*, 162 W.Va. 249, 252 S.E.2d 374 (1978). The defendant reasons that the verdicts are therefore inconsistent, that the jury must have ignored or misunderstood the instructions of the court concerning the elements of second degree murder, particularly malice, and hence the verdicts must be reversed.

The flaw in the defendant's argument is that the prosecution did not rely exclusively on a transferred intent theory. The State had several instructions giving the traditional definition of the elements of both first and second degree murder, as well as lesser-included offense instructions. The State's principal argument was that the defendant intended to kill David Lowe, who was shot in the back as he was attempting to flee the defendant. This was supported by the testimony of a State's witness who saw the defendant fire the first shot, heard a second shot, and while he was driving away saw someone running in his rearview mirror and at the same time

heard the third shot fired. James Lowe testified that he was hit by the first shot and that the last time he saw his brother he was running for cover. Other witnesses confirmed that James Lowe was wounded by the first shot.

When the evidence is viewed in the light most favorable to the prosecution, as required under Syllabus Point 1 of *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978),[3] the jury could have and apparently did believe the prosecution's theory of the case that after the defendant had seriously wounded James Lowe with the first shot, he shot and killed David Lowe as he was running away from the defendant. This evidence would support the second degree murder verdict, and thus the verdicts are not necessarily inconsistent. *See State v. Reed*, 166 W.Va. 558, 276 S.E.2d 313 (1981).

 Moreover, even if we accept the defendant's argument that under a transferred intent theory the second degree murder verdict would be inconsistent with the unlawful wounding verdict, this would not constitute reversible error. The United States Supreme Court has recently treated this issue at some length in *United States v. Powell*, 465 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), and unanimously concluded that appellate review of a claim of inconsistent verdicts is not generally available. It relied heavily on its earlier case of *Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356, 358–59, 80 A.L.R. 161, 163 (1932), where it had stated:

---

**2.** The defendant does not contend that it was improper to give a transferred intent instruction. We have apparently not had occasion to discuss this doctrine at any length, although it is recognized in Syllabus Point 3 of *State v. Briggs*, 58 W.Va. 291, 52 S.E. 218 (1905), *overruled on other grounds, State ex rel. May v. Boles*, 149 W.Va. 155, 139 S.E.2d 177 (1964). The doctrine of transferred intent generally stated is that where one shoots at another intending to kill him and accidentally kills a third party, the same intent is transferred to the killing of the third party. *State v. Gardner*, 57 Del. (7 Storey) 588, 203 A.2d 77 (1964); *Holt v. State*, 266 Ind. 586, 365 N.E.2d 1209 (1977); *Gladden v. State*, 273 Md. 383, 330 A.2d 176 (1974); *State v. Rogers*, 273 N.C. 330, 159 S.E.2d 900 (1968); *State v. Cole*, 121 R.I. 39, 394 A.2d 1344 (1978);

*Riddick v. Commonwealth*, 226 Va. 244, 308 S.E.2d 117 (1983); W. LaFave & A. Scott, Handbook on Criminal Law § 35 at 252–55 (1972).

**3.** Syllabus Point 1 of *Starkey* states:

"In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done."

"Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment. *Latham v. The Queen,* 5 Best & Smith 635, 642, 643. *Selvester v. United States,* 170 U.S. 262 [18 S.Ct. 580, 42 L.Ed. 1029 (1898)]. If separate indictments had been presented against the defendant for possession and for maintenance of a nuisance, and had been separately tried, the same evidence being offered in support of each, an acquittal on one could not be pleaded as *res judicata* of the other. Where the offenses are separately charged in the counts of a single indictment the same rule must hold. As was said in *Steckler v. United States,* 7 F.(2d) 59, 60 [(1925)]:

'The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.' "

The Court in *Powell* went on to give a number of policy reasons why review was impractical and summarized them in this fashion:

"[I]f inconsistent verdicts are nevertheless reached those verdicts still are likely to be the result of mistake, or lenity, and therefore are subject to the *Dunn* rationale. Given this impasse, the factors detailed above—the Government's inability to invoke review, the general reluctance to inquire into the workings of the jury, and the possible exercise of lenity—suggest that the best course to take is simply to insulate jury verdicts from review on this ground." 469 U.S. at 68–69, 105 S.Ct. at 479, 83 L.Ed.2d at 471. (Footnote omitted).

We touched upon this point briefly in *State v. Manstoff,* 118 W.Va. 214, 189 S.E. 698 (1937), but we found that the verdicts were not inconsistent. A number of state courts follow the rule that consistency between jury verdicts is not necessary and as a consequence appellate review of inconsistent verdicts is ordinarily not permitted. *E.g., State v. Martin,* 189 Conn. 1, 454 A.2d 256, *cert. denied,* 461 U.S. 933, 103 S.Ct. 2098, 77 L.Ed.2d 306 (1983); *Commonwealth v. Therrien,* 383 Mass. 529, 420 N.E.2d 897 (1981); *Commonwealth v. Shaffer,* 279 Pa.Super. 18, 420 A.2d 722 (1980); *State v. Leonardo,* 119 R.I. 7, 375 A.2d 1388 (1977); Annot., 18 A.L.R.3d 259 (1968); Annot., 16 A.L.R.3d 866 (1967). We need not trace the precise contours of this rule to determine the extent of the exceptions. In note 8 of *Powell,* 469 U.S. at 69, 105 S.Ct. at 479, 83 L.Ed.2d at 471, the United States Supreme Court commented: "Nothing in this opinion is intended to decide the proper resolution of a situation where a defendant is convicted of two crimes, where a guilty verdict on one count logically excludes a finding of guilt on the other. Cf. *United States v. Daigle,* 149 F.Supp. 409 (D.C.), aff'd *per curiam,* 101 U.S.App.D.C. 286, 248 F.2d 608 (1957), cert. denied, 355 U.S. 913, 78 S.Ct. 344, 2 L.Ed.2d 274 (1958)." Earlier the Court had noted the doctrines of res judicata, collateral estoppel and double jeopardy were also exempted from the rule barring appellate review of inconsistent verdicts. None of these issues are present in this case.

■ The defendant's final point is that the court should not have permitted the State to introduce a .357 magnum handgun and some bullets. The State's testimony was that the deputy sheriffs who investigated the shooting were advised that the gun had been taken to the defendant's home. One of the deputies testified that he went to the defendant's home after the shooting and was given the gun and bullets by the defendant's wife. There was no testimony offered by the State which ballistically linked the gun as the murder weapon. The defendant moved for a mistrial claiming that the failure to connect the gun as the weapon used in the shooting was highly prejudicial.

We do not believe the trial court committed any error. The State sufficiently connected the gun and bullets to the crimes

charged to permit their introduction into evidence. We spoke to a related issue in *State v. Buck,* 170 W.Va. 428, 294 S.E.2d 281, 286 (1982), where the defendant claimed it was error to introduce a club found in his car when the evidence from a co-defendant indicated that the victim had been struck with a tire iron. The victim had stated he was struck from behind with a blunt instrument. We said that "the actual weapon used was not critical to the State's proof of aggravated robbery," citing *State v. Peterson,* 132 W.Va. 99, 51 S.E.2d 78 (1948). In *Peterson,* we dealt with the admissibility of a gun found in the defendant's car, and in Syllabus Point 2 we stated:

> "In a criminal prosecution, if the evidence tends to show that an instrument sought to be admitted in evidence was used in the perpetration of the crime charged in the indictment, it may be admitted and produced for the inspection of the jury."

Here, there was eyewitness testimony connecting the defendant to the shootings with the use of a handgun and circumstantial evidence linking the defendant to the weapon as it was obtained from his home. In these circumstances, the introduction of the gun was not error.

For the foregoing reasons, we affirm the judgment of the Circuit Court of Logan County.

Affirmed.