419 S.E.2d 690

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Ray F. HOSE, Defendant Below, Appellant.**

No. 20514.

Supreme Court of Appeals of West Virginia.

Submitted April 28, 1992.

Decided May 28, 1992.

**430**

Teresa A. Tarr, Asst. Atty. Gen., Charleston, for appellee.

J. David Judy, III, Judy & Judy, Moorefield, for appellant.

PER CURIAM:

This is an appeal by the defendant, Ray F. Hose, from an order sentencing him to four one-year terms in the Doddridge County Jail on four counts of involuntary manslaughter. The charges arose out of a vehicle accident which resulted in the death of four individuals. On appeal, the defendant argues that there was insufficient evidence in the case to support a finding that he was guilty of involuntary manslaughter. He also claims that the verdict of the jury was inconsistent, that the trial court erred in allowing a State trooper to offer expert reconstructionist evidence when the trooper was not a qualified expert, that the court erred in failing to remand the charges against him to a magistrate court, and that the sentences imposed upon him constituted cruel and unusual punishment. After reviewing the questions presented and the record, this Court can find no reversible error. Accordingly, the judgment of the Circuit Court of Doddridge County is affirmed.

The accident out of which the present case arises occurred at approximately 10:45 p.m. on September 3, 1990. At that time, the defendant was driving a tractor trailer in an eastbound direction on U.S. Route 50 in Doddridge County, West Virginia. The road surface was dry and the weather was clear, with a visibility of eight miles. As the defendant headed into a turn, the tractor trailer which he was driving left the highway, passed through a guardrail and into the median of the road. After travelling through the median for approximately 230 feet, the vehicle became airborne for approximately forty feet and landed upright in the westbound lanes of Route 50 and slid across those lanes. In so doing, it struck a 1987 Plymouth Colt station wagon which was heading westbound. The defendant's vehicle pushed the station wagon through the westbound guardrail, then landed on top of it. A fire ensued. The occupants of the station wagon, a couple and their two young children, were killed.

At the time of the accident, the defendant and a co-driver, Terry Sherman, had

been on the road over twenty-one hours and had made numerous deliveries of chicken from the tractor trailer. The defendant had initially driven the vehicle from approximately 1:00 a.m. until 5:30 a.m. During this time, the co-driver, Sherman, had rested in the sleeper berth. At approximately 5:40 a.m., the defendant got in the sleeper berth, where he remained until 9:20 a.m. Between 9:20 a.m. and 4:00 p.m., the defendant at various points dozed in the passenger seat of the vehicle. At 4:00 p.m. the defendant got in the driver's seat and made six deliveries before arriving at Parkersburg at around 9:00 p.m. There the defendant and Mr. Sherman made two other deliveries and stopped at a McDonald's restaurant and ate dinner. They left Parkersburg at approximately 9:45 p.m., at which time Mr. Sherman entered the sleeper berth. As previously indicated, approximately an hour later the accident giving rise to the present case occurred.

Following the accident the defendant was indicted on four counts of involuntary manslaughter in violation of *W.Va. Code*, 61–2–5, and one count of reckless driving in violation of *W.Va. Code*, 17C–5–3. A jury trial was conducted in the case on December 10, 1990. At the conclusion of the trial, the jury found the defendant guilty of four counts of involuntary manslaughter as charged in the indictment. The jury, however, found the defendant not guilty on the reckless driving charge.

In the present proceeding, the defendant makes a number of assignments of error relating to the sufficiency of the evidence in the case. For instance, he claims that there was insufficient evidence upon which to base a finding of guilt. He also claims that the court erred in denying his motions for directed verdict at the close of the State's opening statement and at the close of the State's evidence in chief.

During trial, the State essentially took the position that the defendant was guilty of the crimes charged because of his conduct in the driving of the vehicle. The State showed that the defendant had been on duty for twenty-one hours, in violation of federal and state laws. The State fur-

ther argued that the defendant was driving at an excessive rate of speed and suggested that he had failed to brake in an appropriate manner. In conjunction with the long period which he had been on the road, the State suggested that the defendant had gone to sleep at the wheel.

The defendant, on the other hand, contended that he was forced off the road by a vehicle that had been passing him, falling back, and passing again. He claimed that this vehicle had passed directly in front of him and had caused him to pull to the left in an effort to avoid an accident.

In syllabus point 1 of *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978), this Court discussed the circumstances under which a verdict of guilt in a criminal case will be set aside because of the character of the evidence in the case. The Court stated:

> In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

In the present case the evidence did show that the defendant had been on the road from approximately 1:00 a.m. until 10:45 p.m., the time of the accident. However, as previously indicated, a good part of that time had been spent by the defendant in the sleeper berth of the truck or dozing while he was riding in the passenger seat. Other time had been spent at various stops unloading chicken and eating.

Robert Runner, an enforcement officer with the West Virginia Public Service Commission who conducted a post-accident investigation, analyzed the time spent by the defendant on the day of the accident in conjunction with various laws defining "on-duty" time and testified during trial that

the defendant had exceeded his on-duty time in violation of federal and state laws and that under federal and state safety laws the defendant, who had technically been on duty for more than twenty-one hours, should have been on duty no more than fifteen hours on the day of the accident.

To show that the defendant was going at an excessive speed and that he had failed to brake in an appropriate manner, the State called as a witness State Trooper L.J. Miller, whom the State characterized as an accident reconstruction expert. Trooper Miller indicated that at the initiation of the series of events involved in the accident, the defendant was going into a curve and that the absence of skid marks on the eastbound pavement of the road suggested that the defendant did not apply his brakes as he entered that curve. Further, the lack of skid marks on the pavement and a furrow on the dirt area next to the eastbound guardrail suggested that he did not apply the brakes after he left the roadway and went over the guardrail. The first sign of braking surfaced when the truck was in the median. Trooper Miller concluded:

Based on the total distance traveled, including the damaged guardrails, through here, and the forty-eight feet and came across another fourteen feet, we have a total distance of five hundred seventy feet. If the vehicle, not turning over, again, with the grade in the median, beginning with eighteen to twenty-nine percent, I would say that to be a substantial speed to keep it upright through all of the distance and through this ... I believe, with the total distance traveled, I believe it would be a sufficient speed, elevated speed to do that, to come through the median without upsetting.

To determine whether this evidence supports the jury's verdict in the present case, it is necessary to examine what constitutes involuntary manslaughter in West Virginia.

In syllabus point 7 of *State v. Barker*, 128 W.Va. 744, 38 S.E.2d 346 (1946), this Court stated:

The offense of involuntary manslaughter is committed when a person, while engaged in an unlawful act, unintentionally causes the death of another, or where a person engaged in a lawful act, unlawfully causes the death of another.

In *State v. Lawson*, 128 W.Va. 136, 36 S.E.2d 26 (1945), the Court expounded upon the classic definition of involuntary manslaughter as it relates to deaths resulting from the operation of a motor vehicle. In *Lawson*, the Court noted that something more than ordinary negligence is required to sustain an involuntary manslaughter conviction in such cases. The Court stated:

In our opinion, to convict a person on a charge of negligence, it must appear that the act resulting in death is in itself unlawful, or a lawful act performed in an unlawful manner. It may be said that the commission of an act in an unlawful manner makes that act unlawful from the beginning. But all the definitions of involuntary manslaughter seem to recognize some distinction between an unlawful act and a lawful act performed in an unlawful, or even negligent, manner. Violations of a statute or any improper, reckless or wanton conduct of a nature calculated to cause injury to another should, in our opinion, be considered as acting in an unlawful manner, however lawful that act might have been if performed in a proper manner. This rule would do nothing more than require the State to show that the act, or the manner of the performance of the act, for which conviction is sought is unlawful and culpable, and something more than the simple negligence, so common in everyday life, in which there is no claim that anyone has been guilty of wrongdoing.

*Id.,* 128 W.Va. at 147–148, 36 S.E.2d at 31–32.

The evidence adduced by the State in the present case rather clearly shows that the defendant had exceeded the fifteen-hour on-duty requirement of both state and federal laws regulating drivers of tractor trailers at the time of the accident. It is apparent that the purpose of those laws is to promote safety by insuring appropriate alertness in drivers by insuring that they have an appropriate amount of rest while driving. The amount of time that the de-

fendant had been on duty markedly exceeded the fifteen-hour limit provided by state and federal law and did not constitute a simple technical violation.

Additionally, the State introduced evidence which could have been construed by the jury as showing that the defendant was proceeding at an excessive rate of speed and that he failed to maintain control of his vehicle while on the road. The testimony of Trooper Miller suggests that the defendant ran the tractor trailer off the road as he was heading into a turn. The tractor trailer proceeded a substantial distance before it landed upright on the other side of the road median. While Trooper Miller did not testify as to the rate of speed at which the defendant was travelling, he indicated that it had to be substantial for the tractor trailer to remain upright after travelling over the east bound lane, median, west bound lane, through the guardrails, and then to land on top of the vehicle which contained the four individuals who were killed.

In construing the overall evidence in the light most favorable to the prosecution as is required by *State v. Starkey, supra*, this Court believes that the evidence was sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The Court cannot conclude that the evidence was manifestly inadequate or that consequent injustice has been done.

■ The defendant next claims that the jury's verdict was inconsistent because the jury found the defendant not guilty of the charge of reckless driving. In conjunction with this, he argues that reckless driving, which was involved in the fifth count of the indictment, was an element of involuntary manslaughter and, consequently, an element of the involuntary manslaughter counts, one through four, of the indictment and that reckless driving is, in effect, a lesser included offense involuntary manslaughter. He argues that because the jury specifically found that he was not guilty of reckless driving by finding him innocent of the reckless driving count in the indictment, the jury's finding that he was guilty of involuntary manslaughter on

the remaining counts of the indictment was, in effect, inconsistent. He argues that the jury, in effect, terminated further consideration of the involuntary manslaughter charges upon the finding that he was not guilty of reckless driving.

In *State v. Hall*, 174 W.Va. 599, 328 S.E.2d 206 (1985), this Court addressed the question of whether inconsistent verdicts would support reversal of a criminal conviction. The Court stated:

"Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment.... As was said in *Steckler v. United States*, 7 F.(2d) 59, 60 [ (2d Cir. 1925) ]:

'The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.' "

*Id.* 174 W.Va. at 603, 328 S.E.2d at 210–211, *quoting, Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932).

In view of the holding in *State v. Hall*, this Court cannot conclude that the apparent inconsistency of the verdicts in the present case constituted reversible error.

The defendant claims that the State improperly used Trooper L.J. Miller as a reconstruction expert. He points out that Trooper Miller testified at the grand jury that he was not a tractor and trailer expert, and he argues that under the circumstances the trial court erred in allowing him to give reconstruction testimony during trial.

■ In *State v. Baker*, 180 W.Va. 233, 376 S.E.2d 127 (1988), this Court discussed expert witnesses and concluded in syllabus point 2 that:

Although a witness may be qualified as an expert by practical experience in a field of activity conferring special knowledge not shared by mankind in general, the question of whether a witness quali-

fies as an expert rests in the sound discretion of the trial court, whose decision will not be disturbed unless it is clearly wrong.

In the present case, Trooper Miller testified at some length regarding his background and experience in accident reconstruction. He essentially testified that he had had forty hours in basic accident investigation at the West Virginia State Police Academy, that he had had eighty hours of advanced accident investigation at the University of North Florida, that he had had eighty hours of technical accident investigation at Northwestern University, that he had had an eighty-hour accident reconstruction class at the University of North Florida, that he had taken forty hours of accident photography at the West Virginia State Police Academy, and that, in effect, he had had some 320 hours of instruction in areas related to accident investigation. He also testified that he was a member of the Society of Accident Reconstructionists, that he had personally handled over 600 accidents, and that he had worked with the National Transportation Safety Board on accident investigation. He further stated that he had investigated a number of tractor trailer accidents.

Overall, there is substantial evidence indicating that Trooper Miller had been previously involved in accident investigations involving tractor trailers and that he had basic training which would to some degree equip him for accident investigation and reconstruction. Given these circumstances and Trooper Miller's background, this Court cannot say that the trial court's allowing him to testify as an expert witness constituted an abuse of the trial court's sound discretion or that the trial court's decision was clearly wrong in that matter.

The defendant argues that under *W. Va. Code*, 50-2-3, the magistrate court of a county shall have jurisdiction of all misdemeanor charges committed in the county. He claims that every count of the indictment returned against him was a misdemeanor count and that maximum penalty of incarceration for any of the charges was one year in the county jail. He indicates that there was no felony charge against him and that under the circumstances he had the right to a trial by a jury of his peers in magistrate court on each of the charges in the indictment. He argues that by allowing him to be tried in the circuit court, the circuit court has, in effect, allowed the State to shop for a forum and improperly denied the defendant his right to a jury trial in the magistrate court in violation of the due process guarantees of the State and Federal Constitutions.

 Article VIII, section 6 of the West Virginia Constitution and *W. Va. Code*, 51-2-2, afford circuit courts and magistrate courts concurrent jurisdiction in misdemeanor cases. *See State ex rel. Burdette v. Scott*, 163 W.Va. 705, 259 S.E.2d 626 (1979). A magistrate court can only take exclusive jurisdiction once the defendant is charged by warrant in that court within its jurisdiction. *Id.* In *State ex rel. Burdette v. Scott, supra, Id.* at 709, 259 S.E.2d at 630, the Court stated:

Under W.Va. Code, 62-1-10 (1965), a circuit judge has the power to issue warrants and thereby can initially assume jurisdiction. Moreover, the prosecutor can initiate any criminal proceeding through a grand jury indictment. W.Va. Code, 62-2-1 (1931); *State v. Lucas*, 129 W.Va. 324, 40 S.E.2d 817 (1946). Either avenue makes the circuit court an available forum for the trial of misdemeanor offenses without the necessity of utilizing the magistrate court.

Given the holding in the *Burdette* case, this Court cannot conclude that the trial court erred by assuming jurisdiction of and trying the present criminal matters.

 Lastly, the defendant claims that the sentences imposed upon him constituted cruel and unusual punishment.

As previously indicated, the defendant was convicted on four counts of involuntary manslaughter. It appears that the trial court sentenced him to four one-year terms in the Doddridge County Jail. The trial court, however, suspended the sentences on Counts III and IV and granted him probation for five years on those counts. The court also provided that the sentences on Counts I and II were to run concurrently with each other. The practical effect of the court's action was that

the defendant was required to serve one year in the Doddridge County Jail and five years probation.

On appeal, the defendant claims that no useful purpose can be served by incarcerating him and that by requiring him to serve one year in jail, the trial court imposed cruel and unusual punishment upon him.

Rather clearly, *W.Va. Code,* 61–2–5, provides that a person convicted of involuntary manslaughter "shall be confined in jail not to exceed one year...." Moreover, this Court has recognized that when a defendant is charged with involuntary manslaughter for multiple deaths arising from a single act, he may receive as many sentences as there were deaths. *State v. Myers,* 171 W.Va. 277, 298 S.E.2d 813 (1982).

The Court is not persuaded that the sentences imposed in the present case exceed the parameters allowed by our law.

For the reasons stated, the judgment of the Circuit Court of Doddridge County is affirmed.

Affirmed.