730 S.E.2d 401

**STATE of West Virginia, Plaintiff Below, Respondent**

v.

**Tyrone R. CROUCH, Defendant Below, Petitioner.**

No. 11–0394.

Supreme Court of Appeals of West Virginia.

Submitted April 25, 2012.

Decided May 24, 2012.

Robert C. Catlett, Deputy Public Defender, Charleston, WV, for Petitioner.

Darrell V. McGraw, Jr., Attorney General, Robert D. Goldberg, Assistant Attorney General, Charleston, WV, for Respondent.

PER CURIAM:

This appeal was brought by Tyrone R. Crouch from his criminal conviction in the Circuit Court of Fayette County. Mr. Crouch was convicted by a jury of voluntary manslaughter and sentenced by the circuit court to ten years imprisonment. In this appeal, Mr. Crouch contends that the circuit court improperly instructed the jury on the lesser-included offense of involuntary manslaughter. After a careful review of the briefs, the record submitted on appeal, and listening to the arguments of the parties, we reverse, and remand this case for a new trial.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The record submitted in this appeal indicates that, on April 17, 2009, Lloyd England visited Mr. Crouch's home at around 8:00 p.m. Also in the home at that time was Laura Rubin, Mr. Crouch's ex-wife.[1] When Mr. England arrived, Mr. Crouch was cooking on a grill in the kitchen. According to the testimony of Ms. Rubin, when Mr. England arrived, Mr. Crouch asked him to leave. However, Ms. Rubin convinced Mr. Crouch to allow Mr. England to stay. Ms. Rubin further testified that Mr. England had been drinking before he arrived.

At some point after Mr. England arrived, Mr. Crouch and Ms. Rubin left the home to go to a local store to purchase some butter, cigarettes, and beer. Ms. Rubin testified that after they returned, Mr. England argued with Mr. Crouch for most of the remainder of the evening.[2] At one point, Mr. England pushed Mr. Crouch against a wall in the home. After this incident, Mr. Crouch telephoned Trish Miller, Mr. England's aunt, and told her about Mr. England's aggressive behavior.[3] Mr. Crouch testified that, after

---

1. During the trial, Ms. Rubin testified that, although she was divorced from Mr. Crouch, they had remained friends.

2. The record is not clear as to what the two men were arguing about, but it does appear that at least one argument concerned the beer Mr. Crouch brought back from the store.

3. Mr. Crouch testified that he had known Mr. England for over thirty years, and that he knew from experience that Ms. Miller could calm him down whenever he became aggressive.

he spoke with Ms. Miller, Mr. England came toward him with a knife. In an effort to defend himself, Mr. Crouch testified that he picked up a crowbar that was in the house and struck Mr. England once across the face. After Mr. England fell to the floor bleeding, Mr. Crouch dialed 911. EMS workers arrived and rushed Mr. England to a hospital.[4] However, Mr. England died several hours after being admitted to the hospital.

On September 9, 2009, a grand jury indicted Mr. Crouch on one count of first-degree murder. The case was tried before a jury in November 2009.[5] The jury returned a verdict finding Mr. Crouch guilty of voluntary manslaughter. The trial court sentenced Mr. Crouch to a determinate sentence of ten years imprisonment. This appeal followed.

## II.

### STANDARD OF REVIEW

▮ The sole issue presented in this case is whether the trial court properly instructed the jury on the lesser-included offense of involuntary manslaughter. We have indicated that "the question of whether a jury was properly instructed is a question of law, and the review is de novo." Syl. pt. 1, in part, State v. Hinkle, 200 W.Va. 280, 489 S.E.2d 257 (1996). Elaborating on the standard of review, we have indicated:

A trial court's instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not mislead by the law. A jury instruction cannot be dissected on appeal; instead, the entire

instruction is looked at when determining its accuracy. A trial court, therefore, has broad discretion in formulating its charge to the jury, so long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion.

Syl pt. 4, State v. Guthrie, 194 W.Va. 657, 461 S.E.2d 163 (1995). With the foregoing standards in mind, we consider the issue raised in this appeal.

## III.

### DISCUSSION

▮ As previously indicated, the only issue presented in this appeal is whether the trial court properly instructed the jury on the elements of involuntary manslaughter.[6] We long have held that "[t]he offense of involuntary manslaughter is committed when a person, while engaged in an unlawful act, unintentionally causes the death of another, or where a person engaged in a lawful act, unlawfully causes the death of another." Syl. pt. 7, State v. Barker, 128 W.Va. 744, 38 S.E.2d 346 (1946). Accord State v. Dinger, 218 W.Va. 225, 230 n. 6, 624 S.E.2d 572, 577 n. 6 (2005); State v. Hose, 187 W.Va. 429, 432, 419 S.E.2d 690, 693 (1992); Syl. pt. 3, State v. Lough, 143 W.Va. 838, 105 S.E.2d 538 (1958). In essence, involuntary manslaughter may be committed by a person engaging in a "lawful" or an "unlawful" act.

In its initial charge to the jury, the trial judge gave the following instruction with respect to the crime of involuntary manslaughter:[7]

---

4. The State put on evidence to discredit Mr. Crouch's testimony that Mr. England had a knife. This was done though the testimony of two EMS workers and a police officer. The EMS workers and police officer stated that, when they arrived at the home, they did not see a knife near Mr. England's body. However, after the body was removed, a knife was found near where the body had been lying when the authorities arrived. The State's evidence suggested that Mr. Crouch planted the knife near the crime scene after the body was removed.

5. Mr. Crouch testified at the trial.

6. The State contends that this issue was not properly preserved for appellate review. We disagree. After reviewing the trial transcript, we find that Mr. Crouch properly preserved his objection to the instruction given by the trial court.

7. Mr. Crouch had tendered a different instruction on involuntary manslaughter. The instruction offered by Mr. Crouch was properly rejected by the trial judge as an incorrect statement of the law. Consequently, our review is merely to determine whether the instruction given was accurate.

Involuntary manslaughter, a misdemeanor, is committed when a person, while engaged in a *lawful* act, unintentionally causes the death of another person or where a person engaged in a *lawful* act unlawfully causes the death of another person.

To prove the commission of involuntary manslaughter, a misdemeanor, a lesser included offense of that charged in the indictment, the State must prove beyond a reasonable doubt the following:

That the defendant, Tyrone R. Crouch, Jr., in Fayette County, West Virginia, on or about April 17, 2009, while engaged in an *unlawful* act unintentionally and with a reckless disregard for the safety of others caused the death of Lloyd L. England. (Emphasis added).

■ Mr. Crouch correctly points out that the following language taken from the above instruction was not correct: "Involuntary manslaughter, a misdemeanor, is committed when a person, while engaged in a *lawful* act, unintentionally causes the death of another person[.]" (Emphasis added). Under the decision in *Barker*, the word "lawful" was incorrect as it should have been "unlawful." Thus it is clear that the first part of the instruction on involuntary manslaughter was not correct. We have held that, "[w]here a trial court gives, over objection, an instruction which incompletely states the law, and the defect is not corrected by a later instruction, the giving of such incomplete instruction constitutes reversible error where the omission involves an element of the crime." Syl., *State v. Jeffers*, 162 W.Va. 532, 251 S.E.2d 227 (1979).

■ Under *Jeffers*, an incorrect instruction may be found harmless where a later instruction corrects the erroneous instruction. In this case, the trial judge did, in fact, initially correct the instruction when it informed the jury that the State had to prove Mr. Crouch, "while engaged in an *unlawful* act[,] unintentionally and with a reckless disregard for the safety of others caused the death of Lloyd L. England." (Emphasis added). If the issue we are addressing simply ended with the last instruction, we might not be inclined to find reversible error.

However, the trial court compounded the error when the jury asked to be re-instructed on second-degree murder and voluntary manslaughter. Rather than confine its re-instruction to the issues raised by the jury, the trial judge decided to re-read all of the instructions in the entire charge to the jury. In doing so, the trial judge read the following instructions regarding involuntary manslaughter:

Involuntary manslaughter, a misdemeanor, is when a person while engaged in a *lawful* act unintentionally causes the death of another person or where a person engaged in a *lawful* act unlawfully causes the death of another person.

To prove the commission of involuntary manslaughter, a misdemeanor, a lesser included offense of that charged in the indictment, the State must prove beyond a reasonable doubt the following:

That the defendant, Tyrone R. Crouch, Jr., in Fayette County, West Virginia, on or about April 17, 2009, while engaged in a *lawful* act, unintentionally and with a reckless disregard for the safety of others, caused the death of Lloyd L. England.

(Emphasis added.)

In the second reading of the elements of involuntary manslaughter, the trial court completely omitted any mention of an "unlawful" act. Under the instruction that was re-stated to the jury, involuntary manslaughter could only be committed by a lawful act. This re-stated instruction is inconsistent with the previous instruction given by the trial judge. Mr. Crouch points out that "[w]e have traditionally held that the giving of inconsistent instructions is error." *John D. Stump & Assocs., Inc. v. Cunningham Mem'l Park, Inc.*, 187 W.Va. 438, 447, 419 S.E.2d 699, 708 (1992). As we held in Syllabus point 2 of *Burdette v. Maust Coal & Coke Corp.*, 159 W.Va. 335, 222 S.E.2d 293 (1976):

It is error to give inconsistent instructions, even if one of them states the law correctly, inasmuch as the jury, in such circumstances, is confronted with the task of determining which principle of law to follow, and inasmuch as it is impossible for

a court later to determine upon what legal principle the verdict is founded.

Because of the clearly inconsistent and confusing definition of involuntary manslaughter given by the trial court, we cannot with any sense of certainty believe that the jury truly understood how they could reach a verdict on that lesser included offense.

During oral argument before this Court, the State contended that, under *State v. Bail,* 140 W.Va. 680, 88 S.E.2d 634 (1955), reversal is not required because no prejudice was shown from the inconsistent instructions. In *Bail,* this Court held, in Syllabus point 8, that "[t]he refusal of a proper instruction or the giving of an improper one raises a presumption of injury and prejudice, warranting a new trial, unless the court can see from the record the complaining party was not injured." The problem with the State's reliance on *Bail* is that it has failed to show that no prejudice resulted from the confusing and inconsistent instructions.[8] Further, as previously indicated, we are unable to determine independently from the record that the inconsistent instructions were harmless. Therefore, we must reverse and remand for a new trial.[9]

### IV.

### CONCLUSION

In view of the foregoing, the judgment order convicting and sentencing Mr. Crouch is reversed, and this case is remanded for a new trial consistent with this opinion.

Reversed and Remanded.

---

**8.** We reject the State's contention that, because the jury asked to be re-instructed on second-degree murder and voluntary manslaughter the question shows that the jury was not considering involuntary manslaughter, and, therefore, no prejudice resulted. The jury's failure to request any further guidance on involuntary manslaughter very well could have been because it adopted the erroneous instruction on the offense that was originally given.

**9.** Of course, on retrial, the maximum offense that Mr. Crouch is exposed to being convicted of is voluntary manslaughter. "[W]ell established

double jeopardy principles ... preclude a higher conviction on retrial where the defendant has been implicitly acquitted of such higher offense by his conviction of a lesser included offense at the original trial." *State ex rel. Young v. Morgan,* 173 W.Va. 452, 454, 317 S.E.2d 812, 813 (1984). *See* Syl. pt. 1, in part, *State v. Young,* 173 W.Va. 1, 311 S.E.2d 118 (1983) ("Upon retrial of a criminal defendant, ... the court may not impose judgment for a more serious degree of homicide than that imposed at the original trial.").