**UNITED STATES of America, Appellee,**

v.

**Donald Lee SMITH, Appellant.**

No. 78–5027.

United States Court of Appeals,
Fourth Circuit.

Argued Aug. 24, 1979.

Decided Nov. 9, 1979.

Roger L. Dillard, Sylva, N. C., for appellant.

Phillip G. Kelley, Asst. U. S. Atty., Charlotte, N. C. (Harold M. Edwards, U. S. Atty., Asheville, N. C., S. Lee Atkins, Asst. U. S. Atty., on brief), for appellee.

Before BUTZNER, HALL and PHILLIPS, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

Donald Lee Smith appeals his jury trial conviction of manslaughter under 18 U.S.C. §§ 1112, 1153 for the killing of George Edward Ledford. The sole issue on appeal is whether the district court erred in admitting into evidence an incriminating statement made by Smith to investigating officers. There is no contention that Smith was not informed of his fifth and sixth amendment rights as required in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Smith argues, however, that he did not effectively waive those rights. We conclude that he did and affirm the judgment of the district court.

Smith was visiting in the trailer of an acquaintance on the Cherokee Indian Reservation outside Cherokee, North Carolina, when several persons came up in a van and entered the trailer. A fight ensued in which Smith was struck in the mouth. When his assailants then left the trailer, entered the van and started to drive away, Smith came out and fired several rounds from a 30–30 rifle toward the van. One round entered the van and struck and killed Ledford, a passenger.

Special Agent James Carlile of the F.B.I. was notified of the shooting and went immediately to the trailer. Smith came out at Carlile's command and Carlile and other officers then took Smith and a wounded companion into the Town of Cherokee. Under circumstances that will be more fully developed in later discussion, Smith gave the statement in issue.

At trial, upon defendant's suggestion of the statement's involuntariness, the district judge conducted a *voir dire* inquiry, made findings of voluntariness, and admitted the statement into evidence in accordance with 18 U.S.C. § 3501. He later gave jury instructions pertaining to the jury's consideration of the statement as required by 18 U.S.C. § 3501. The jury found Smith guilty of manslaughter and this appeal followed.

I.

█ *Miranda* held that once given the now familiar warnings of his rights under the fifth and sixth amendments, a suspect could "waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently." 384 U.S. at 444, 86 S.Ct. at 1612. Two grounds for finding that Smith did not validly waive his *Miranda* rights are urged here. First it is contended that he was too drunk to waive his rights.

█ The test of whether a person is too affected by alcohol or other drugs voluntarily and intelligently to waive his rights is one of coherence, of an understanding of what is happening. In *United States v. Sledge*, 546 F.2d 1120, 1122 (4th Cir. 1977), we held a statement properly admitted where the district court found "that the defendant was aware of what was occurring when interrogated and voluntarily, intelligently, and knowingly signed the waiver form," even though it was uncontroverted that the defendant had used narcotics on the day of the interrogation. In *United States v. Martin*, 434 F.2d 275, 279 (5th Cir. 1970), a confession was held properly admitted where the evidence supported a finding that while the defendant "had been drinking and was affected by alcohol to some degree, his facilities were not so impaired that he did not understand what was going on nor was he incoherent."

█ Smith and his companion, Dugan Cabe, testified at the *voir dire* proceeding to having drunk enormous quantities of alcohol in the twenty-four hour period before the interview. The interrogating officers, however, testified that while Smith seemed "high" he was not "completely drunk," and that he knew what he was doing. Smith's own testimony indicated awareness of his surroundings and an ability to converse with understanding at the critical time. Having heard the witnesses, the district court found that while Smith "appeared to be drinking . . . he was sober enough to know where he was and to recognize who

the people around him were," and concluded that the statement was "freely, voluntarily and understandingly made." This finding cannot be held clearly erroneous on the evidence before the district court. *See United States v. Lewis,* 528 F.2d 312 (4th Cir. 1975).

## II.

The second possible basis for finding that Smith did not effectively waive his *Miranda* rights is more troublesome. The issue presented is whether interviewing officers "scrupulously honored" Smith's initial decision not to talk to them.[1]

After being brought to the Town of Cherokee Smith was interviewed in a back room of the Cherokee Police Department. The interview was conducted by Special Agent Carlile, with Officer Jesse Murphy of the Cherokee Police Department also present. Smith had known Murphy for some time; his first acquaintance with Carlile had occurred a little over an hour before when Carlile called him from the trailer.

Carlile gave Smith a copy of his *Miranda* rights and read them aloud, with Smith apparently reading along with him. Smith said he did not want to talk. Carlile asked no further questions about the occurrence at that time, but properly began taking descriptive information from Smith. For reasons that are unclear from the record, Carlile apparently then left the room briefly, leaving Smith and Murphy alone. In the course of an ensuing conversation, Murphy told Smith it would be best if he cooperated with Carlile.

When Carlile returned to the room he resumed taking descriptive information. Murphy left the room, apparently to get Smith a glass of water. Smith then told Carlile that he would talk, but not in the presence of Murphy. Carlile did not again read the *Miranda* warnings to Smith, but "made sure" that Smith understood them. It was then that Smith executed the waiver and gave the challenged statement to Carlile alone. Approximately nine minutes elapsed from the giving of the warnings to the execution of the waiver and the ensuing statement.

A suspect's right to terminate questioning is a critical safeguard against coerced confessions. Through the exercise of this right, a suspect

> can control the time at which questioning occurs, the subjects discussed, and the duration of the interrogation. The requirement that law enforcement authorities must respect a person's exercise of that option counteracts the coercive pressures of the custodial setting. . . . [T]he admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his "right to cut off questioning" was "scrupulously honored."

*Michigan v. Mosley,* 423 U.S. 96, 103–04, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975).

Here Carlile ceased questioning Smith after Smith said he did not want to talk. The discussion that later resulted in the challenged statement was apparently initiated by Smith. There is no question but that a defendant who has asserted his *Miranda* rights may change his mind and waive them. *See, e. g., United States v. Grant,* 549 F.2d 942 (4th Cir. 1977), *vacated on other grounds,* 435 U.S. 912, 98 S.Ct. 1463, 55 L.Ed.2d 502 (1978). The only question is whether the officers "scrupulously honored" Smith's initial decision to remain silent. The only fact that would suggest that they did not is Murphy's single comment that it would be best to cooperate.

1. This point was apparently not pressed specifically in the district court, and was not made the subject of a specific finding of fact by the district judge. However, the district judge did take specific note of the circumstances of the initial decision to remain silent, followed by the later decision to give the statement, and the finding of voluntariness clearly implies consideration of this ground as well. On appeal, the defendant relied essentially on the intoxication argument in his written brief, posing it as the sole issue. The "scrupulously honored" issue was only raised directly on oral argument. Nevertheless, we have considered the matter properly before us and have given it full consideration.

*Mosley* dealt with renewed questioning of a suspect rather than with specific suggestions to reconsider a decision to remain silent, but it is instructive with respect to the occurrences in the instant case. In *Mosley* the defendant was arrested in connection with two robberies. He was given full *Miranda* warnings, and when he refused to answer any questions about the robberies interrogation ceased. Two hours later a different officer conducted a second interview, this time about an unrelated homicide. Again Mosley was given the full *Miranda* warnings. Mosley did not again assert his right to remain silent, however, and the renewed interrogation resulted in a confession. The court held that the confession was admissible. *Miranda* could not "sensibly be read to create a *per se* proscription of indefinite duration upon any further questioning by any police officer on any subject, once the person in custody has indicated a desire to remain silent." *Mosley*, 423 U.S. at 102–03, 96 S.Ct. at 326. Mosley was not subjected to "repeated efforts to wear down his resistance and make him change his mind," but rather the officers resumed questioning "only after the passage of a significant period of time and the provision of a fresh set of warnings, and restricted the second interrogation to a crime that had not been a subject of the earlier interrogation." *Id.* at 105–06, 96 S.Ct. at 327.[2]

More factually comparable to the instant case is *United States v. Collins*, 462 F.2d 792 (2d Cir. 1972) decided by the Second Circuit before *Mosley*. There a suspect had been interviewed three times in the twenty hours since his arrest. Each time he had been read his *Miranda* rights and each time he had refused to talk. The officers appealed to the defendant, who was charged with a bank robbery in which a guard had been shot, to cooperate with them in capturing the other robbers, so that they might prevent "more killings, more bloodshed and

more bank robberies." *Id.* at 794. A confession followed. In upholding its admissibility, the court said that the police conduct

> amounted to no more than an exhortation that Collins reevaluate his decision not to talk. We do not believe that anything decided in *Miranda* was meant to prohibit police officers from ever asking a defendant to reconsider his refusal to answer questions. So to hold would be tantamount to enacting a "no questioning" rule once a suspect was in custody. Such a rule finds no support in the Fifth Amendment nor, fairly read, in *Miranda* itself, nor in common sense.

> . . . Here Collins was not subjected to any immediate re-interrogation, but only was asked to reconsider his refusal to answer. So long as such reconsideration is urged in a careful, noncoercive manner at not too great length and in the context that a defendant's assertion of his right not to speak will be honored, it does not violate the *Miranda* mandate.

*Id.* at 797.

We need not embrace *Collins'* specific holding to find this a fair and reasonable analysis of *Miranda*'s teaching on the point at issue. We are dealing here with much more innocuous police conduct—a single comment that we do not believe constitutes the kind of coercion or enticement that would render Smith's statement involuntary. It is true that Murphy's comment came immediately after Smith's assertion of his right to remain silent. But its content was perfectly consistent with an intention to continue honoring Smith's decision to remain silent. The evidence completely supports an assessment that it was not calculated to overbear Smith's will and that it did not have that effect. Smith's own testimony at the *voir dire* hearing suggests that it did not. "Did Policeman Jesse Murphy convince you to talk to Mr. Carlile?" Smith's own attorney asked. "Like I said," Smith replied, "he just said, 'It's best, Bodie, to go ahead and talk to him.'"

---

2. The Court in *Mosley* made clear that the result it reached might well have been different if the defendant had asked to see a lawyer, rather than simply refusing to answer questions. *Id.*, at 101 n.7, 96 S.Ct. 321. Nothing we decide here would necessarily apply to that situation. *See United States v. Clark*, 499 F.2d 802 (4th Cir. 1974). *See also Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977).

In assessing the admissibility of incriminating statements, we must of course be mindful of the Supreme Court's warning that "illegitimate and unconstitutional practices get their first footing . . . by silent approaches and slight deviations from legal modes of procedure." *Boyd v. United States*, 116 U.S. 616, 635, 6 S.Ct. 524, 535, 29 L.Ed. 746 (1886), quoted in *Miranda*, 384 U.S. at 459, 86 S.Ct. 1602. We must also remain mindful, however, of the Supreme Court's admonition in *Mosley* that *Miranda* is to be read "sensibly." We conclude that to hold this statement inadmissible on the basis of Murphy's comment that preceded it would not be a sensible reading of *Miranda* but would instead create a *per se* rule of the very sort rejected in *Mosley*.

*AFFIRMED.*