911 F.2d 736
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Frank CHANDLER, Petitioner-Appellant
v.
Michael O'LEARY and Neil F. Hartigan, Respondents-Appellees.
 No. 89-3679.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 31, 1990.*
Decided Aug. 17, 1990.
 
 Before COFFEY and FLAUM, Circuit Judges, and PELL, Senior Circuit Judge.
 
 ORDER
 
 1
 Frank Chandler appeals from the denial of his petition for writ of habeas corpus under 28 U.S.C. Sec. 2254. He argues that an amendment to the indictment under which he was tried was improper; that his confession should not have been admitted into evidence; that his trial should have been severed from that of one of his co-defendants; and that the prosecutor's closing argument made the trial fundamentally unfair.
 
 
 2
 On January 15, 1981 at about 11 p.m. Karen Carthen and her 9-year-old son Ronald were returning to their Chicago apartment after a trip to the local store. Karen Carthen had some beer and some wine, and the change from a $20 bill was in her glove. They were met outside the apartment by three men in ski masks, one of them holding a gun. Through a hole in the gunman's mask, Karen Carthen recognized her neighbor Willie Joe Bell, who lived on the fourth floor of the apartment building. She recognized another of the men as the petitioner Frank Chandler by the sound of his voice. The man with the gun pushed the Carthens into the apartment. Willie Rogers, who lived with the Carthens, was there along with his brother, Jerry Rogers. Willie Rogers, too, recognized Bell through the mask. Bell held the gun while Chandler tied up Willie Rogers and Jerry Rogers with lengths of clothesline. Bell held the gun to Karen Carthen's head and demanded money and drugs. When she said she had none, Bell aimed at her son's head and repeated his demand. The change from the $20 did not satisfy Bell; he threatened to shoot Ronald unless more money and drugs were produced. He pulled the trigger, killing the boy. The three men then fled the apartment taking the few dollars, Karen Carthen's glove, and a bottle of wine with them.
 
 
 3
 Karen Carthen immediately called the police and told them that Bell and Chandler were responsible. Police rushed to Bell's apartment where they found Bell, Chandler and Ronald Ollins leaving. All three were arrested and read their Miranda rights. All invoked their constitutional right to remain silent. A search of the apartment discovered clothesline of type that was used to tie up the Rogers brothers. Karen Carthen picked Willie Joe Bell out of a visual lineup at the police station, and Frank Chandler out of a voice lineup. The next morning at about 6 a.m. Assistant State's Attorney Irving Miller came to the cell where Chandler was being held. Miller read Chandler his Miranda rights and asked if Chandler wanted to talk.[1] Chandler gave a statement in which he admitted that he helped plan the robbery, and that the murder weapon was his .38 caliber revolver, but he denied that he had been present during the crime.
 
 
 4
 Police learned that Ollins had helped plan the robbery but that he had not participated; the third man in the Carthens' apartment was Elroy Watkins. Watkins gave a written statement to police admitting his involvement in the crime, and implicating Chandler as well. According to Watkins' statement, Chandler had learned that Karen Carthen had a large amount of money as well as narcotics in her apartment. Chandler planned the attack, and he was indeed one of the men in the ski masks.
 
 
 5
 Chandler, Bell and Watkins were charged with conspiracy, armed robbery, home invasion and murder. The conspiracy count against Chandler charged that he had shot and killed Ronald Carthen as an overt act in furtherance of the conspiracy. This count of the indictment was amended immediately before jury selection to charge the robbery of Karen Carthen as the overt act. Chandler's motions to suppress his confession and to be tried separately were denied. At trial the state presented the testimony of Karen Carthen and the statements of Chandler and Watkins. Watkins' written confession was edited to replace Chandler's name with the words "this person." Neither Chandler nor Watkins took the witness stand, and Chandler presented no evidence on his own behalf. The jury returned a verdict of guilty on all charges, and Chandler was sentenced to concurrent terms of 40 years for murder, 20 years for armed robbery and 20 years for home invasion. No sentence was imposed on the charge of conspiracy. The Illinois Appellate Court affirmed the convictions, and the Illinois Supreme Court denied leave to appeal.
 
 
 6
 Chandler raised four issues in his petition to the district court, and he raises the same issues here.
 
 1. Amendment of the Indictment
 
 7
 Chandler states that he was denied due process of law by the late change in the indictment from an allegation that he personally shot Ronald Carthen to an allegation that he merely robbed Karen Carthen. Under these circumstances, the amendment of the indictment does not justify a grant of habeas corpus relief. We can grant habeas relief only if the petitioner is in custody, and Chandler is not in custody on the conspiracy charge. He does not argue that he was hampered in his defense against the charges that he is serving time for. It appears that Chandler's complaint is that Illinois law forbids a substantive amendment to an indictment. Ill Rev.Stat. ch. 38, p 111-5. But even if there was an error of state law, this does not mean the federal Constitution was violated. So long as Chandler had notice of the charges against which he was to defend and was protected from the threat of a second prosecution for the same offense, the due process clause is not offended. See United States v. Field, 875 F.2d 130, 133 (7th Cir.1989) (Presentment Clause and Double Jeopardy Clause in a federal prosecution); see also United States v. Jungles, 903 F.2d 468, 476 (7th Cir.1990). Chandler did not request a continuance once leave to amend the indictment was granted; we conclude that he was prepared to defend against the charge as amended. This is not a surprise, because Chandler and his attorneys were well aware of the State's evidence against him through discovery and through the earlier hearings on motions to suppress evidence.
 
 2. Chandler's Confession
 
 8
 Chandler argues that commencing questioning in the jail the morning after the arrest violated his due process rights because he had already invoked his right not to speak about the case the previous evening. He states that his choice not to speak was not "scrupulously honored" as required by Michigan v. Mosely, 423 U.S. 96 (1975). As the district court and the state point out, this Circuit has never squarely addressed whether the state may resume questioning about an offense at some time after the accused has invoked his right to remain silent. The only difference between this case and Mosely is that in Mosely the later questioning concerned a different offense. The Supreme Court held that police could ask about the other offense if the suspect's right to cut off questioning was respected. All circuits which have addressed the question of whether the rationale of Mosely applies to later questioning about the same offense have decided that it does. Wilson v. Henderson, 584 F.2d 1185, 1188-89 (2d Cir.1978), cert. denied 442 U.S. 945 (1979); United States v. Smith, 608 F.2d 1011, 1014-15 (4th Cir.1979); United States v. Bosby, 675 F.2d 1174, 1182 (11th Cir.1982). We agree. The purpose of the right of a suspect to cut off questioning is to give the suspect control over the timing and subject matter of police interrogation so as to counteract the coercive nature of custodial interrogation. Mosely, 423 U.S. at 103-04.[2] It is not necessary to achieve these ends that police be barred entirely from asking a suspect if he wishes to change his mind about making a statement; it is necessary only that the invitation to speak not be coercive. In this case, Chandler had been given several hours to reflect before the Assistant State's Attorney asked if he wanted to talk, and he was again advised of his Miranda rights immediately before he chose to make his statement. There is not even an allegation that Chandler felt coerced into confessing. Chandler was obviously aware of his right to be silent, and he was also aware that his exercise of that right would be honored.
 
 3. Motion to Sever
 
 9
 Chandler argues that it was a violation of his Sixth Amendment right to confront witnesses against him to deny his motion for severance. He states that the admission of Watkins' confession, even with the redaction of Chandler's name, violated the rule laid down in Bruton v. United States, 391 U.S. 123 (1968). Bruton held that an instruction from the court allowing the consideration of a codefendant's confession against the declarant only did not adequately protect the rights of another defendant implicated in the confession. If the declarant exercised his Fifth Amendment right not to take the witness stand, the other defendant would have no opportunity to confront the source of the damaging information.
 
 
 10
 Although in this case Watkins' statement was edited to remove Chandler's name, the district court found that merely replacing the name with "this guy" or "this person" was not enough to keep Watkins' statement from improperly implicating Chandler. In the context of this case, we agree with the district court that this is not the sort of redaction envisioned by the Supreme Court in Richardson v. Marsh, 481 U.S. 200 (1987). We shall therefore treat the case as if Chandler had been mentioned by name in the statement read to the jury.
 
 
 11
 Allowing evidence of Watkins' statement was clearly a violation of the the Confrontation Clause under the rule of Bruton. But in our opinion the error had no effect on the outcome of the case. The error was harmless beyond a reasonable doubt because the evidence against Chandler was so overwhelming that even if Watkins' statement had been excluded there is no doubt that the jury would have convicted. First, Watkins' statement was substantially similar to Chandler's own confession, and we have held that that confession was properly admitted into evidence. Chandler's admission that he planned the offense would have been enough to support the convictions under Illinois law even if he had not been physically present at the time of the shooting. Ill.Rev.Stat. ch. 38, p 5-2. Therefore the cumulative effect of Watkins' statements could not have been "devastating." Cruz v. New York, 481 U.S. 186, 190-93 (1987). On top of this there was Karen Carthen's voice identification of Chandler. Chandler has never attacked the credibility of that identification, and it placed him squarely on the scene. Chandler put on no defense to the charges. As the district court said, quoting United States v. Hasting, 461 U.S. 499, 503 (1983), "a more compelling case of guilt would be difficult to imagine."
 
 4. Closing Argument
 
 12
 Chandler's last claim is that improper comments by the prosecutor during his closing argument made the trial fundamentally unfair, thus denying Chandler due process of law. The prosecutor made several improper remarks, and for the most part the errors were caught and corrected by the trial judge. Improper comments by the prosecutor justify grant of the Great Writ only if, viewed in the context of the record as a whole, the comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986), quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). We consider whether the comments adversely affected the jury's ability to judge the evidence fairly. United States v. Young, 470 U.S. 1, 12 (1985). We hold, as did the Illinois Appellate Court and the district court, that the evidence of Chandler's guilt was so overwhelming (even disregarding Watkins' statement) that the prosecutor's argument did not have any effect on the jury's decision.
 
 
 13
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal is submitted on the briefs and record
 
 
 [1]
 Chandler contends that Miller did not advise him of his Miranda rights that morning, but the trial court specifically found that Miller did inform Chandler of his rights. Transcript at 572-73. This factual finding is supported by the evidence, and is therefore entitled to a presumption of correctness. 28 U.S.C. Sec. 2254(d)
 
 
 [2]
 We hasten to add that our conclusion does not apply to renewed interrogation after a suspect has invoked the right to counsel. Edwards v. Arizona, 451 U.S. 477 (1981)