43 F.3d 1469
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael Todd ROZELLE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Donald Jay THOMAS, a/k/a D-Nice, Defendant-Appellant.
 Nos. 93-5713, 93-5856.
 United States Court of Appeals, Fourth Circuit.
 Argued Sept. 30, 1994.
Decided Dec. 14, 1994.
 
 Appeals from the United States District Court for the Western District of North Carolina, at Charlotte. Robert D. Potter, Senior District Judge. (CR-92-284-3-P)
 ARGUED: B. Grant Smithson, Charlotte, NC, for appellant Thomas; Jesse James Waldon, Jr., Charlotte, NC, for appellant Rozelle. Robert James Conrad, Jr., Assistant United States Attorney, Charlotte, NC, for appellee. ON BRIEF: Mark T. Calloway, United States Attorney, Charlotte, NC, for appellee.
 W.D.N.C.
 AFFIRMED.
 Before MURNAGHAN and MOTZ, Circuit Judges, and CHASANOW, United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Two defendants, Michael Rozelle and Donald Thomas, both of whom pled guilty to various violent and drug crimes involved in one drug conspiracy, appeal their sentences and convictions. At Rozelle's sentencing hearing, the district court admitted prior self-incriminating statements that Rozelle claims were beyond the scope of his Miranda waiver, and Rozelle here raises objections to his conviction and sentence on Fifth Amendment grounds. At Thomas's sentencing hearing, the district court refused to force a co-defendant to testify, and Thomas now raises due process and Sixth Amendment confrontation grounds for contesting his sentence. Thomas further contests the sufficiency of the evidence of the drug quantity and the degree of murder for which he was sentenced. The government argues that Thomas has waived this appeal. Thomas contends that his purported waiver is ineffective as to the alleged errors raised on appeal. Finding no error, we do not decide the issue of waiver, and we affirm the judgment below.
 
 I. Appellant Thomas
 
 2
 We first address the government's contention that Thomas has waived his right to appeal. Thomas signed a plea agreement containing language indicating waiver of certain appeal rights. The district court held a plea and Rule 11 hearing at which the judge asked Thomas if he understood that he was waiving his right to contest his conviction and sentence on direct appeal or in a post-conviction proceeding, to which Thomas responded, "Yes, sir." The "waiver" signed here stated:
 
 
 3
 [T]he defendant knowingly and expressly waives the right to appeal whatever sentence is imposed on any ground, including any appeal right conferred by Title 18 United States Code, Section 3742. Further, the defendant agrees not to contest either the conviction or the sentence in any postconviction proceeding, including, but not limited to, any proceeding under Title 18 United States Code, Section 2255, except with respect to claims of ineffective assistance of counsel or prosecutorial misconduct.
 
 
 4
 We have addressed such a waiver before, and explained its limits in United States v. Marin, 961 F.2d 493, 496 (4th Cir.1992):
 
 
 5
 We agree ... that a defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court. For example, a defendant could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race.
 
 
 6
 Here, however, we need not resolve the question of whether Thomas, despite the waiver, can appeal his conviction or sentence on grounds such as penalty in excess of statute or constitutional error, because our study of the record satisfies us that no such grounds have been shown to exist.
 
 
 7
 Thomas pled guilty to drug conspiracy, conspiracy to commit violent crime in aid of racketeering activity, and the murders of Johnny Duncan and Michael Farquherson. The remaining counts were dismissed on the government's motion. At sentencing, the district court allowed admission of evidence from the trial of co-conspirator Adrian Davis, at which trial Davis had been convicted by a jury of aiding and abetting first degree murder. The evidence from the Davis trial showed that Thomas, at Davis' command, had murdered Duncan after waiting for him in the woods along a path where Thomas had known Duncan would be walking. The evidence also showed that Thomas had murdered Farquherson by shooting him at point-blank range while the other members of the conspiracy robbed Farquherson's home of drugs, money, and guns. Various co-defendants, including one Fewell, had testified at the Davis trial about the amounts and types of drugs involved. The co-defendants had testified that, as part of the drug conspiracy, they had converted all stolen cocaine into cocaine base ("crack"). Thomas requested that the district court sever his sentencing hearing from that of co-defendant Fewell, so that Thomas could call Fewell as a witness to cross-examine him on the amounts of drugs Fewell had testified to at Davis' trial. Fewell refused to testify at this point, claiming Fifth Amendment privilege. The district court refused to sever the hearings or to force Fewell to testify. The district court sentenced Thomas to two concurrent life sentences with a concurrent three-year term, overruling Thomas' objections to the degree of murder and the amount of drugs attributed to him.
 
 
 8
 Thomas attempts to appeal his sentence on the grounds that the district court constitutionally erred when it applied an offense level of first degree murder for Thomas' violations of 18 U.S.C. Secs. 1959(a)(1) and 2. Thomas' indictment describes only second degree murder, and thus Thomas claims that he can be sentenced only for second degree murder.
 
 
 9
 A district court's factual findings at sentencing are reviewed for clear error, and must be established by a preponderance of the evidence but need not be found beyond a reasonable doubt. United States v. Melton, 970 F.2d 1328, 1331-32 (4th Cir.1992). There is no requirement that a defendant be sentenced to only those crimes charged specifically in the indictment, or only those crimes for which a defendant was actually convicted by a jury. Melton, 970 F.2d at 1331. It follows that there is no requirement that a defendant be sentenced only for those crimes to which he intended to plead guilty.
 
 
 10
 Under 18 U.S.C. Sec. 1959(a)(1) (West Supp.1994), a defendant can be punished for "murder" (no particular degree specified) in aid of racketeering activity. In North Carolina, the situs of the instant murders, murder is classified as first degree when it is accomplished by premeditation, by lying in wait, or in the course of a felony. N.C. Gen.Stat. Sec. 14-17 (1993). The jury in Davis' trial found Davis guilty of aiding and abetting first degree murder for the murders of Duncan and Farquherson. Evidence at Davis' trial showed that Thomas murdered Duncan by lying in wait, and that Thomas murdered Farquherson in the course of the felonies of robbery and burglary. Thus, the district court's finding of first degree murder and imposition of sentence based on the offense level for first degree murder was not clearly erroneous.
 
 
 11
 Thomas also challenges his sentence on the grounds that he was given an insufficient opportunity to contest the amounts of drugs which were attributed to him for sentencing purposes, because he was not allowed to cross-examine co-defendant Fewell. Although Fewell invoked a Fifth Amendment right not to testify at Thomas's sentencing, Thomas claims that Fewell had waived his Fifth Amendment rights by testifying at Davis' trial. The testimony at the Davis trial, including that of Fewell, was used at Thomas's sentencing to evince drug quantities involved in the conspiracy.
 
 
 12
 The Supreme Court has ruled that a sentencing judge may consider personal knowledge and affidavits which are beyond a defendant's ability to cross-examine. Williams v. New York, 337 U.S. 241, 251 (1949). The Fourth Circuit has ruled that sentencing courts may consider uncorroborated hearsay. United States v. Bowman, 926 F.2d 380, 381 (4th Cir.1991). In Bowman, the presentence report advised the defendant of the evidence he would be faced with at sentencing, he had an opportunity at sentencing to present evidence in rebuttal of the testimony, and the testimony in question had been given under oath in open court where the defendant had had an opportunity at trial to cross-examine the witness. Bowman, 926 F.2d at 381. In the instant case, Thomas was advised in the presentence report that such evidence would be used at sentencing, and that he had the opportunity, of which he did not avail himself, to rebut the testimony with other evidence and witnesses. Fewell's testimony had been given under oath in open court at Davis' trial, and Davis had had a strong interest in cross-examining and attacking Fewell's testimony at that trial. Because adequate prior cross-examination in open court and an opportunity to present rebuttal evidence satisfy a defendant's due process confrontation rights, Thomas' rights here were not infringed.
 
 
 13
 Thus the district court's decision not to sever Thomas' and Fewell's sentencing hearings, and to allow Fewell to refuse to testify at Thomas' sentencing, was not clearly erroneous. Moreover, it appears that even without considering Fewell's testimony, i.e. ignoring the quantities of drugs to which Fewell testified, the district court still could have found that the conspiracy involved over 1.5 kilograms of cocaine base and over .5 kilogram of heroin, and thus any error from failure to allow Thomas to cross-examine Fewell's testimony was harmless.
 
 
 14
 Thomas further contests the total amount of drugs attributed to him at sentencing. A district court's finding of the amount of drugs attributable to a defendant is a factual question and is reviewed for clear error. United States v. D'Anjou, 16 F.3d 604, 614 (4th Cir.), cert. denied, 114 S.Ct. 2754 (1994). The government must prove drug quantity by a preponderance of the evidence. United States v. Goff, 907 F.2d 1441, 1444 (4th Cir.1990). In doing so, "[n]either the Guidelines nor the courts have required precise calculations of drug quantity." United States v. Uwaeme, 975 F.2d 1016, 1019 (4th Cir.1992). A defendant convicted of drug conspiracy is sentenced based on the total amount of drugs involved in the conspiracy, U.S.S.G. Sec. 2D1.4, provided that the drug quantities were reasonably foreseeable to the defendant and within the scope of his conspiratorial agreement, United States v. Irvin, 2 F.3d 72, 75 (4th Cir.1993), cert. denied, 114 S.Ct. 1086 (1994).
 
 
 15
 Here, the district court considered the evidence of drug quantities admitted at the Davis trial. The quantities clearly amounted to at least 1.5 kilograms of cocaine base and .5 kilogram of heroin. Thomas was at all times deeply involved in all actions of the conspiracy, and therefore none of the drug amounts were beyond the scope of his conspiratorial agreement or unforeseeable to him. Thus the district court's finding of drug quantity was not erroneous.
 
 
 16
 Because we find no defect such as a sentence in excess of statutory limits or a constitutional error in Thomas' sentence or conviction--in fact we find no error in any of the district court's rulings regarding Thomas--we do not decide the issue of waiver.
 
 II. Appellant Rozelle
 
 17
 Turning to the contentions of Rozelle, he appeals his sentence and conviction on the basis that the district court should not have admitted his self-incriminating statements at sentencing. During pre-trial negotiations, Rozelle approached the government and offered to take a polygraph exam in order to improve his bargaining position. Apparently the government, Rozelle, and his attorney believed that the polygraph would pertain to the murders of Darmika Gray and Jeffery Hill. Prior to the exam, however, the polygraph administrator informed the government that polygraph protocol required separate polygraph examinations for each murder. There is no evidence that Rozelle and his attorney were even informed that the polygraph would only pertain to one murder at any time prior to the day of examination.
 
 
 18
 On the day of the examination, Rozelle signed a Miranda waiver to which the agent administering the polygraph had added the words, "My attorney Jesse Waldron has agreed for me to take this polygraph." Rozelle signed the waiver and asked to speak to his attorney, with whom he spoke for a few minutes. The attorney then left, and the administrator began the pre-polygraph interview which is standard protocol for a polygraph. The administrator asked Rozelle about the Gray murder, and told Rozelle he would not be asking him about the Hill murder until a later occasion. Rozelle then volunteered information about the Hill murder, and the administrator followed up with more questions about the Hill murder. The administrator proceeded to administer a polygraph consisting of four questions on the Gray murder, and the post-polygraph interview took place.
 
 
 19
 Rozelle initially went to trial with co-defendant Adrian Davis. In a pre-trial motion, Rozelle contested the government's attempt to admit the self-incriminating statements which Rozelle had made at the pre-polygraph interview. The district court delayed ruling on admissibility until later in the trial when the pertinent witnesses would have been called. Rozelle entered a guilty plea before the trial reached that point.
 
 
 20
 After Rozelle's guilty plea, the district court conducted a plea and Rule 11 hearing. Rozelle admitted guilt on five counts in the Bill of Indictment including conspiracy to possess with intent to distribute cocaine base and heroin, conspiracy to commit violent crimes in aid of racketeering activity, the murders of Gray and Hill in aid of racketeering activity, and assault with a deadly weapon in aid of racketeering activity. On the government's motion, the district court dismissed the remaining counts against Rozelle.
 
 
 21
 At sentencing, Rozelle stipulated to the factual basis for his plea, with the exception of his continuing objection to the introduction of his self-incriminating statements given before or after the polygraph examination, and which linked him to the murder of Hill. The district court permitted admission of the statements, along with evidence from Davis' trial which showed drug amounts and details of the Hill murder. The government presented witnesses on the details of the Gray murder at the sentencing hearing. The district court sentenced Rozelle to three concurrent life sentences, a concurrent three-year term, and a concurrent twenty-year term.
 
 
 22
 Rozelle appeals his sentence and conviction on the basis that the district court should not have admitted his prior self-incriminating statements at sentencing, and that the court's delayed ruling on admissibility chilled his fair trial rights and coerced him into pleading guilty. Rozelle claims that these statements were beyond the scope of his written waiver because he intended for the waiver to apply only to his answers to the four questions on the polygraph, not to his answers to questions before or after the polygraph.
 
 
 23
 Whether Rozelle voluntarily, knowingly, and intelligently waived his Fifth Amendment rights, see Miranda v. Arizona, 384 U.S. 436, 444 (1966), is a question of fact reviewed for clear error. E.g., United States v. Smith, 608 F.2d 1011, 1013 (4th Cir.1979). In order to find waiver, a court must consider the totality of the circumstances surrounding the defendant's actions. Edwards v. Arizona, 451 U.S. 477, 482 (1981). When, as here, the district court does not make specific findings after hearing the evidence, "its determination that the confession was admissible will be upheld if there is any reasonable view of the evidence to support it." United States v. Lewis, 528 F.2d 312, 314 (4th Cir.1975).
 
 
 24
 Looking to the totality of the circumstances, it is clear from the record that Rozelle knowingly and intelligently waived his Fifth Amendment rights prior to the pre-polygraph interview, and that this waiver was not limited to the four questions asked on the polygraph test. The words, "My attorney Jesse Waldron has agreed for me to take this polygraph," when viewed in context, did not limit Rozelle's signed Miranda waiver to the polygraph questions; these words were added by the administrator of the polygraph to make clear that Rozelle had agreed not only to waive his right to be silent, but also to take the polygraph itself.
 
 
 25
 The questions asked prior to the polygraph regarding the Gray murder were part of the polygraph protocol, and Rozelle clearly waived his right not to be a witness against himself with regard to those questions. Rozelle then volunteered information about the Hill murder, and the administrator asked follow-up questions. Although the administrator had not intended to ask about the Hill murder at this time, Rozelle and his attorney did not know this prior to the polygraph; from the record, it appears that they believed, at the time Rozelle signed the waiver, that the questions would cover both the Gray and Hill murders. Thus Rozelle's waiver covered the information he volunteered and the answers he gave to questions about the Hill murder, and admission of those statements did not violate his Fifth Amendment rights. Because admission of the statements did not violate his rights, delay in ruling on admissibility could not have unconstitutionally chilled his fair trial rights.
 
 
 26
 In sum, our search of the record has disclosed no error, and certainly no clear error in the district court's rulings concerning Rozelle.
 
 Accordingly, the judgment is
 
 27
 AFFIRMED.