# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 19-0253** (Grant County 18-F-3)

**Joshua Evans,**
**Defendant Below, Petitioner**

**FILED**
**April 20, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Joshua Evans, by counsel J. Brent Easton, appeals the Circuit Court of Grant County's February 15, 2019, order denying his post-trial motions and imposing sentence following his conviction for one count of first-degree murder. Respondent the State of West Virginia, by counsel Scott E. Johnson, filed a response.

The Court has considered the parties' briefs and record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Robert "Bobby" Lee Shoemaker was struck by a vehicle while walking along a road near Petersburg, West Virginia, on July 10, 2017. On July 14, 2017, deputies were dispatched to the scene of a dead body, later identified as Mr. Shoemaker, approximately twenty-five feet over an embankment. A burgundy pickup truck driven by Petitioner Joshua Evans was seen traveling on that road on July 10, 2017, with damage to the driver's side of the windshield and grill. Officers located that truck on July 17, 2017, when it was discovered that the windshield had been removed, the identification numbers sanded, and a coat of black spray paint had been poorly-applied. Petitioner was arrested without incident for the offense of second-degree murder.

Petitioner was indicted on one count of first-degree murder for the death of Mr. Shoemaker and two counts of possession of a controlled substance. Petitioner filed a motion to sever the murder count from the drug counts, and that motion was granted by the circuit court. The State filed a notice to use Rule 404(b) evidence, to which petitioner objected. The circuit court held a hearing on the 404(b) evidence before entering an order granting, in part, and denying, in part, the admissibility of that evidence. Petitioner was tried by a jury on the murder charge and was convicted of that charge. However, the jury recommended that petitioner receive mercy in sentencing.

1

On December 20, 2018, petitioner filed a motion for a new trial, asserting insufficiency of the evidence, that the State twice impermissibly attacked petitioner's Fifth Amendment right, that the trial judge impermissibly informed the jury of the existence of drug counts that had been severed from the murder before trial, and that Rule 404(b) evidence was impermissibly introduced at trial.

In its February 15, 2019, order, the circuit court found that petitioner's post-trial motions were defense motions that had previously been ruled upon at trial. Specifically, the circuit court found

> that there was sufficient evidence, at the trial, for the jury to determine malice that [petitioner's] argument with regard to a violation of [his] Fifth Amendment Right, under the Keeseker case does not amount to a violation; that the single answer of the [i]nvestigating [o]fficer did not mislead the jury to the prejudice of [petitioner]; that the single, nonresponsive,[sic] remark was isolated; that the strength of the evidence, at trial, was more than sufficient to convict [petitioner]; and that the remark was not deliberately placed before the jury to divert attention to extraneous matters.

The circuit court went on to find that petitioner's argument with regard to the rebuttal argument of the State was not a reference to petitioner's Fifth Amendment right so petitioner's post-trial motions were denied.

After hearing remarks from the victim's aunt and mother and an apology from petitioner to the victim's mother, the circuit court imposed sentence. Petitioner appeals the circuit court's February 15, 2019, order denying his post-trial motions and sentencing him to life imprisonment and a recommendation of mercy, with credit for time served. Petitioner appeals from that order.

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance,* 207 W.Va. 640, 535 S.E.2d 484 (2000). With these standards in mind, we turn to petitioner's five assignments of error.

Petitioner first argues that there was insufficient evidence to support a conviction for first-degree murder, which requires "willful, deliberate and premeditated killing." W. Va. Code § 61-2-1. He asserts that, because there were no witnesses to the incident, the State relied on the "cumbersome argument" that the elements necessary for first-degree murder existed based upon petitioner's purported feud with a man named Cody VanMeter. He contends that the State proposed that petitioner "(1) saw who he believed to be Cody VanMeter and ran him down in a malicious, premeditated act; or (2) saw who he believed to be Cody VanMeter, flew into a rage, and intentionally ran him down." He argues, however, that both contentions are flawed. Petitioner

2

admits that he had an ongoing feud with Mr. VanMeter but argues that the testimony established that the confrontations between the two consistently stayed well below the level of homicidal assaults. Petitioner also points to testimony from Mr. Shoemaker's widow, who said that although Mr. VanMeter and Mr. Shoemaker were cousins, Mr. Shoemaker had a distinct walk and that while Mr. VanMeter always wears a hat, Mr. Shoemaker rarely did.

Petitioner asserts that the evidence, at most, supports a charge of voluntary manslaughter, which is a "sudden, intentional killing upon gross provocation and in the heat of passion." *State v. Beegle*, 188 W. Va. 681, 685, 425 S.E.2d 823, 827 (1992).[1] He argues that if the jury truly believed that petitioner mistook Mr. Shoemaker for Cody VanMeter, went into a rage, and intentionally ran him over, then voluntary manslaughter is the most severe offense of which he should have been convicted. Petitioner did not and does not contest that he was driving the pickup truck when it struck Mr. Shoemaker, but he contends that the incident was the result of accidental and/or negligent conduct by petitioner.

As we have repeatedly found,

> "[a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. . . ." Syllabus Point 3, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

Syl. Pt. 3, in part, *State v. Hoyle*, __ W. Va. __, 836 S.E.2d 817 (2019). "Malice . . . is an essential element of . . . first . . . degree murder." *State v. Hall*, 174 W. Va. 599, 602, 328 S.E.2d 206, 210 (1985). The circuit court's jury instruction regarding malice provided, in part:

> [Malice] may be inferred or implied by you from all the evidence in this case if you find such inference is reasonable from the facts and circumstances in this case which have been proven to your satisfaction beyond all reasonable doubt. Malice may be inferred from any deliberate and cruel act done by [petitioner] without any reasonable provocation or excuse, however sudden. Malice is not confined to ill will towards any one or more particular persons; but malice is every evil design in

---

[1] *But see* Syl. Pt. 3, *State v. McGuire*, 200 W. Va. 823, 490 S.E.2d 912 (1997) ("Gross provocation and heat of passion are not essential elements of voluntary manslaughter, and, therefore, they need not be proven by evidence beyond a reasonable doubt. It is intent without malice, not heat of passion, which is the distinguishing feature of voluntary manslaughter.")

general. . . . It is not necessary that malice must have existed for any particular length of time; and it may first come into existence at the time of the act or at any previous time thereto.

With regard to intent, the circuit court further instructed that

where the State of West Virginia introduces evidence and shows beyond a reasonable doubt that [petitioner] intended to kill or injure someone under circumstances which you do not believe afforded [petitioner] excuse, justification, or provocation for his or her conduct; but in the course of attempting to commit the crime accidentally injured or kills another person, the [c]ourt may find the [petitioner's] criminal intent will be transferred to the injured or killed unintentional victim.

We have held that "[w]hether malice exists in a particular case is a question for the jury to determine . . . ." *State v. Scott*, 206 W. Va. 158, 165, 522 S.E.2d 626, 633 (1999). We also keep in mind our finding that the

[i]ntention to kill need not exist for any particular length of time for the act to be wilful, deliberate, and premeditated; it is only necessary that the intention initially should come into existence anytime before the homicide. *State v. Burdette*, 135 W.Va. 312, 63 S.E.2d 69 (1951); *State v. Painter*, 135 W.Va. 106, 63 S.E.2d 86 (1950).

*State v. Ferguson*, 165 W. Va. 529, 534, 270 S.E.2d 166, 170 (1980) (overruled on other grounds by *State v. Kopa*, 173 W. Va. 43, 311 S.E.2d 412 (1983)).[2]

Petitioner's argument ignores the doctrine of transferred intent. As this Court has explained,

[t]he doctrine of transferred intent can be described by stating that when one party shoots at another with the intent to kill, and accidentally kills a third party, the same intent will be transferred to the killing of the third party. Syl. pt. 8, *State v. Meadows,* 18 W.Va. 658 (1881). *See also State v. Hall,* 174 W.Va. 599, 328 S.E.2d 206, 209 n. 2 (1985); *State v. Currey,* 133 W.Va. 676, 57 S.E.2d 718 (1950).

*State v. Daniel*, 182 W. Va. 643, 653, 391 S.E.2d 90, 100 (1990). While the instant matter is obviously factually distinct from one involving a firearm, the requisite intent remains the same. The jury was instructed that in order to find petitioner guilty of murder, it had to find beyond a reasonable doubt that the evidence showed that petitioner intended to kill or injure someone without excuse, justification, or provocation. It is undisputed that the jury heard testimony from numerous witnesses regarding petitioner's ongoing feud with Mr. VanMeter, including previously trying to run him over with an all-terrain vehicle. Considering the evidence in the light most

---

[2] *See also* Syl. Pts. 5 and 6, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

favorable to the prosecution and crediting all inferences and credibility assessments that the jury might have drawn in favor of the prosecution, we find that there was sufficient evidence to support petitioner's murder conviction.

Petitioner next argues that the circuit court erroneously admitted Rule 404(b) evidence that petitioner and Mr. VanMeter had an ongoing feud. He asserts that that evidence lacked any logical nexus to Mr. Shoemaker and prejudiced petitioner by portraying him as a violent man. Petitioner asserts that the first prong of *State v. McGinnis*, 193 W. Va. 147, 155, 455 S.E.2d 516, 624 (1994), was not satisfied:

> First, the trial court must determine whether the "other crime" evidence is probative of a material issue other than character. Evidence reflecting only a propensity to commit a crime is inadmissible. The burden is squarely on the prosecution to identify, with particularity, the specific purpose for which the evidence is being offered. In other words, the prosecution has the burden of identifying a specific and relevant purpose that does not involve the prohibited inference from character to conduct.

Here, petitioner argues that even assuming that the evidence was admissible for purposes of showing motive, preparation, plan, or absence of mistake or accident with regard to Mr. Shoemaker's murder, to presume that petitioner would extend his animosity toward Mr. VanMeter to Mr. Shoemaker is "a significant and unreasonable stretch, particularly given the fact that the State's proposed evidence made no allegation that [petitioner] and Mr. Shoemaker had any feud of their own or were even more than acquaintances." Petitioner also contends that the second step of the test requires that the proposed evidence be relevant under Rules 401 and 402 of the West Virginia Rules of Evidence; however, he asserts it was not. He argues that "[w]hile the State's proposed evidence would arguably have been logically relevant were Cody VanMeter the victim, it is not logically relevant to believe that an ongoing feud between [petitioner] and Cody VanMeter would result in harm to Mr. Shoemaker." Petitioner further argues that the only rational inference to be drawn by a juror is that because petitioner allegedly had a sometimes violent feud with Mr. VanMeter that he must have committed a violent offense against someone else, which is inadmissible character evidence outside the scope of Rule 404(b).

While Rule 404(b)(1) prohibits "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character[,]" Rule 404(b)(2) provides that "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. . . ." This Court reviews "the trial court's decision to admit evidence pursuant to Rule 404(b) under an abuse of discretion standard." *McGinnis*, 193 W. Va. at 159, 455 S.E.2d at 528. As petitioner admits, the "linchpin for determining admissibility of prior act evidence is one of logical relevancy." *Id.* at 156, 455 S.E.2d at 525. Under the specific facts of this case, with the transferred intent theory a key part of the State's theory of the case and presentation of evidence to the jury, the State's 404(b) evidence establishing animosity and ill will between petitioner and Mr. VanMeter is both relevant and admissible. *See State v. Hager*, 204 W. Va. 28, 36, 511 S.E.2d 139, 147 (1998) ("As to the relevancy of other violent acts between a defendant and a deceased, courts have generally permitted such evidence to show ill will or

5

hostility as bearing upon intent, malice, and motive for the homicide.”). Thus, we find that the circuit court did not err in admitting evidence of the ill will between petitioner and Mr. VanMeter despite the fact that Mr. VanMeter was not the victim.[3]

Petitioner’s third assignment of error is his contention that the circuit court erred and violated his Fifth Amendment right to remain silent by allowing the arresting officer to testify that petitioner did not deny striking Mr. Shoemaker when questioned at the time of his arrest. When the arresting officer testified during petitioner’s trial, he stated that petitioner “had no reaction, no ‘I didn’t do it’ or there was no ‘It was an accident,’ nothing.” He argues that the State’s question to the officer was improper because “it was highly likely to evoke an answer in violation of [petitioner’s] Fifth Amendment right to remain silent . . . .” Petitioner further asserts that a corrective instruction to the jury was insufficient to correct the error.

During his direct examination by the State, the prosecutor asked the officer, “When you told him he was under arrest, what reaction, if any, did you observe?” After the response complained of by petitioner, petitioner’s trial counsel asked to approach the bench and voiced his concern to the judge. The circuit court stated, “[a]ll right. We’re going to back off of it and move on.” The State then suggested that the court tell the jurors to disregard the unexpected testimony, and petitioner’s counsel agreed. The circuit court immediately told the jurors “[a]ll right. Ladies and gentlemen, you just heard of a conversation between Deputy Thorne and [petitioner] at the time he was arrested. At that time, he had the obvious right to remain silent, so disregard the testimony about whatever response he made. Okay. Thank you.” Neither party asked any additional questions of the officer. We note that a jury is presumed to follow the court’s instructions. *See State v. Corey,* 233 W. Va. 297, 310 n.22, 758 S.E.2d 117, 130 n.22 (2014) (instruction to disregard improper testimony) (citing Syl. Pt. 2, in part, *Rice v. Henderson*, 140 W.Va. 284, 83 S.E.2d 762 (1954)); *State v. Miller*, 197 W. Va. 588, 605-06, 476 S.E.2d 535, 552-53 (1996) (instruction to view the evidence and decide the case without bias). Because the officer’s statement was so brief and the circuit court immediately gave a curative instruction, with the consent of petitioner’s counsel, we find that the circuit court did not err in denying petitioner’s post-trial motions on this ground.

_____

[3] We note that the circuit court gave a limiting instruction to the jurors, which was given without objection at the presentation of testimony, instructing them, in part, that the

> evidence has been admitted for a limited purpose in this trial. You may only consider the collateral evidence presented by the State through the testimony of Mr. VanMeter for the limited purpose of showing intent, motive, and absence of mistake with regard to the act of allegedly intentionally hitting Mr. Shoemaker thinking it was Mr. VanMeter. You are hereby instructed to consider the evidence for the limited purpose I have directed and are not to consider the evidence as proof of [petitioner’s] guilt on any charge.

Similar instructions were given with regard to the testimony of other witnesses regarding incidents with Mr. VanMeter.

Similarly, petitioner argues that the State committed reversible error by informing the jury during closing argument that petitioner's theories of reasonable doubt had not been asserted or provided to the State prior to trial. He contends that during closing arguments his counsel addressed all of the facts as presented to the jury and alluded to the conclusions that could be reasonably drawn from them, arguing that there was strong evidence that this was an accident or, at most, a rage or heat of passion killing. On rebuttal, the prosecutor told the jury that "in this particular instance, the defense did not have to let me know what their theory was, nor did I know for sure what their theory was until [petitioner's trial counsel] sat down." Petitioner argues that those comments constitute prejudicial, reversible error because those remarks amounted to a comment on petitioner's failure to testify. He contends there is a high likelihood that those statements misled the jury and prejudiced petitioner. Petitioner denies that those comments were isolated, characterizing them as arguably extensive. According to petitioner, because he has satisfied the factors set forth in *State v. Sugg*, 193 W. Va. 388, 456 S.E.2d 469 (1995), he is entitled to a new trial.

In this case, as part of his rebuttal closing argument, the prosecutor said that "in this particular instance, the defense did not have to let me know what their theory was, nor did I know for sure what their theory was until [petitioner's counsel] sat down." As this Court has found,

> [f]our factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

*Id.* at 393, 456 S.E.2d at 474, syl. pt. 6. Regarding the allegedly improper statements made by the State, this Court has previously held that "[a] judgment of conviction will not be set aside because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice." *Id.* at 393, 456 S.E.2d at 474, syl. pt. 5. Indeed, "[t]he test is whether the remarks 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* at 405, 456 S.E.2d at 486. The determination of whether improper prosecutorial argument "has so prejudiced the trial process as to require reversal must be gauged from the facts of each trial." *Id.* In this case, we find that the prosecutorial comments do not rise to the level of infecting the trial with unfairness and further find that they do not clearly prejudice petitioner or result in manifest injustice, particularly because he prefaced his comment with "the defense did not have to let me know what their theory was."

Petitioner's final assignment of error is his contention that he was prejudiced by the circuit court's statement to the jury at the beginning of the trial that they would be hearing a "murder and drug case," despite the fact that the two trials had been severed. In his brief argument on this issue, petitioner asserts that a juror might have assumed that if a defendant committed one criminal act, then he likely committed other criminal acts. He admits that this may not be a "reversible error on its face" but contends that that mistake "arguably contributed to the litany of other errors" that led to his "unsupported conviction."

7

There is no question that the circuit court severed the offenses contained in the indictment or informed the jury that they would be hearing a "murder and drug" case. Shortly thereafter, petitioner's trial counsel moved for a mistrial based upon the judge's incorrect statement to the jurors at the outset of voir dire. Outside the presence of the jury, the circuit court considered the motion, indicating that "the [c]ourt greatly regrets that, but the indictment I got said he had two counts of possession of a controlled substance on it. . . . I will make sure that they know that I was wrong and that has nothing to do with this case." When the jurors were brought back to the courtroom, the circuit court addressed some preliminary matters before informing the jurors as follows:

> Now, I made a mistake in the beginning of this trial, confusing this with another murder case I have – which is not here – and mentioned that there were charges of possession of controlled substance. That was my error. Do not bring that into your thoughts at all, please, please. That was my mistake.

This Court has found, "'[o]ur review of a circuit court's decision to deny a motion for a mistrial is reviewed under an abuse of discretion standard.' *State v. Robert Scott R., Jr.*, 233 W.Va. 12, 18, 754 S.E.2d 588, 594 (2014)." *State v. Berry*, 239 W. Va. 226, 233, 800 S.E.2d 264, 271 (2017). As set forth above, a jury is presumed to follow the instructions of the circuit court. Petitioner does not argue that any evidence of the drug charges was introduced or even alluded to by any witness or the State. Therefore, we cannot find that the circuit court abused its discretion by denying petitioner's motion for a mistrial based upon the circuit court's isolated remark, followed by its curative comments. For these reasons, we affirm the circuit court's denial of petitioner's post-trial motions following his conviction for first-degree murder.

Affirmed.

**ISSUED:** April 20, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

8